[Decided May 1, 1897.]

## FALCONIO *v.* LARSEN.

(48 Pac. 703; 37 L. R. A. 255.)

| | |
|---|---|
| 31 | 137 |
| a36 | 526 |
| 31 | 137 |
| 46 | 146 |
| 31 | 137 |
| e48 | 30 |

1. INSOLVENCY—ASSIGNABILITY OF A PREFERRED CLAIM FOR LABORER'S WAGES.—The preferential claim for wages of laborers given by the act of February 20, 1891, (Laws, 1891, p. 82) is, after presentation, assignable, and, when assigned, the assignee may maintain suit thereon in his own name: *The Victorian Number Two*, 26 Or. 194, applied.*

2. ASSIGNMENT OF CHOSE IN ACTION.—The fact that a claim for wages is assigned for collection only does not destroy its validity or affect the right of the holder to sue in his own name: *Roberts* v. *Parrish*, 17 Or. 583, followed.

3. ATTORNEYS—COMPROMISE PENDING SUIT.—Settlement out of court after an action is brought, if made without the knowledge or consent of the attorney for the plaintiff, is to be viewed with suspicion, especially if the defendant knew of a contract giving the attorney supervisory control over the distribution of the collection.

## From Multnomah: E. D. SHATTUCK, Judge.

*LABORER.—For a discussion of what classes of persons are included in the terms "laborers" and "employees," see a note to *Johnston* v. *Barrills*, 27 Or. 251 (50 Am. St. Rep. 717.) Subsequent cases on the subject are but few: In *Lewis* v. *Fisher*, (Md.) 26 L. R. A. 278, it was decided that the expression "wages or salaries to clerks, servants, or employees," does not include the compensation of an attorney for legal services. In New York it has been lately held (*Palmer* v. *Van Santvoord*, 153 N. Y. 612, 38 L. R. A. 402) that a person employed at a salary by a manufacturing company to travel among its customers, to fix and set up, pack, unpack, and ship

The purpose of this action is to establish ninety-eight different and distinct claims, ranging in amount from $1.25 to $100, preferred by certain laborers and employees against the estate of E. S. Larsen, an insolvent debtor, for labor and services rendered the said Larsen within ninety days prior to the date of his assignment for the benefit of his creditors, and is prosecuted under the provisions of an act entitled "An Act to Protect Employees and Laborers in Their Claims for Wages," approved February 20, 1891 (Laws, 1891, p. 82). Larsen was a contractor for the construction of a ditch for irrigating purposes in Wasco County, and the claimants were laborers, and in that capacity performed work, labor, and services thereon at his special instance and request. Each of them made a statement of his claim under oath, in all respects as required by the statutes, and presented the same to the assignee within thirty days after the assignment. Some twenty days later, Larsen filed exceptions thereto, and thereafter they were all assigned by the claimants to Donny Falconio, who brings this action, setting forth in his complaint as many different causes of action as there were original claimants. It is alleged

its products, and incidentally to solicit sales, is an employee, within the meaning of a statute giving a preference to claims for wages of employees.

A general manager and superintendent of a mine, who does not perform bodily toil, does not "labor" within the meaning of a statute giving a lien to one "who performs labor," etc.: *Boyle* v. *Mountain Key Mining Company*, (N. M.) 50 Pac. 347. The Supreme Court of Georgia decided that, generally speaking, a clerk in a store is not a "laborer," though each case must be determined with reference to its own particular facts and circumstances (*Oliver* v. *Macon Hardware Company*, 58 Am. St. Rep. 300, 98 Ga. 249, 25 S. E. 403); and a later case from the same state holds that a civil engineer is not a "laborer," whose wages are exempt from garnishment. The court says: "By reference to his testimony it will readily appear that, while he may have performed some work with his hands, some work attended with physical and muscular exertion, yet his services in the main were not such as depended for their proper performance upon mere physical power to do ordinary manual labor, but consisted principally of work requiring mental

that each of said claims was assigned for collection, and that the amount collected is to be paid to the respective claimants.    There was a judgment for plaintiff, from which defendant appealed.

AFFIRMED.

For appellant there was an oral argument by *Mr. Walter S. Perry*, with a brief over the names of *Milton W. Smith* and *Wallace W. Thayer*, (*Mr. Perry*, of counsel), urging these points:

The act of 1891 is to be construed strictly; no one comes within its terms unless the statute puts him there, expressly or by necessary implication: *Johnston* v. *Barrills*, 27 Or., at page 259 (50 Am. St. Rep. 717, 41 Pac. 656).

The lien is strictly personal to the class of persons indicated, and, in the absence of a statute to that effect, cannot be assigned, either as to the right to claim and perfect it, or as to the right to enforce it: *Caldwell* v. *Lawrence*, 10 Wis. 331; *Brown* v. *Smith*, 55 Iowa, 31; *Dano* v. *M. A. & R. Company*, 27 Ark., at p. 566; *Cairo, etc., Railway Company* v. *Fackney*, 78 Ill., at p. 119; *Pierson* v. *Tincker*, 36 Me. 384; *Roberts* v. *Fowler*, 4 Abb.

skill or business capacity, and involving the exercise of his intellectual faculties:" *McPherson* v. *Stroup*, 28 S. E. 157.  So, too, writing editorials for a newspaper, preparing copy for the printers, directing the make-up of the paper, reading proof, reporting and gathering news, is not "labor" such as will support a preferred claim against an insolvent estate, since such services are intellectual rather than manual; but the work of a mailing clerk is "labor" such as the statute contemplates: *Michigan Trust Company* v. *Grand Rapids Democrat*, (Mich.) 71 N. W. 1102. Those of the foregoing cases that are reported in the Law. Rep. Ann. and Am. St. Rep. have extensive notes that practically exhaust the law of the subject.

The president of a manufacturing company is not an "office agent, a mechanic or laborer," so as to give him a preference for unpaid salary: *Seventh National Bank* v. *Shenandoah Iron Company*, 35 Fed. 436; nor are the claims for salary by the manager, or secretary, or treasurer of an insolvent corporation "labor claims," so as to entitle them to a priority of payment over general creditors: *Fidelity Insurance Company* v. *Roanoke Iron Company*, 81 Fed. 440.—REPORTER.

Pr. 263; *Fitzgerald* v. *First Presbyterian Church*, 1 Mich.. (N. P.) 243; *Horton* v. *Sparkman*, 2 Wash., at p. 168; *Lehigh Coal, etc., Company* v. *Central Railway Company*, 29 N. J. Eq., at p. 255.

If the benefits of the privilege are assignable, they cannot be assigned until the right to the preference has been ascertained and fixed definitely and with certainty, and so ascertained and fixed by the personal acts of the laborer himself: *Brown* v. *Harper*, 4 Or. 89; *Mills* v. *La Verne Land Company*, 97 Cal. 254 (33 Am. St. Rep. 168); *McCrea* v. *Johnson*, 104 Cal. 224; *Casey* v. *Ault*, 4 Wash. 167; *Goodman* v. *Pence*, 21 Neb. 459; *Noll* v. *Keneally*, 37 Neb. 879; *Tewksberry* v. *Bronson*, 48 Wis. 581.

The privilege given by the act of 1891 is not consummated, where it is contested, until it is established by judgment: Laws, 1891, pp. 82–3, §§ 1–2.

Where there is a statute upon the subject, the attorney has such lien only as the statute gives him, and it can be enforced only in the manner provided for by that statute: *Alderman* v. *Nelson*, 111 Ind. 255.

Plaintiff's counsel could get no lien until judgment and notice, because prior to that time the debt of defendant to plaintiff was not "money in the hands of the adverse party" within the meaning of 1 Hill's Ann. Laws, Or. p. 689, § 1044, par. 3: *In re Scoggin*, 5 Saw. 549.

Where there is no statute to the contrary effect, and no competent notice to defendant of the fact that plaintiff's counsel claim a lien, the parties may settle the controversy between themselves: *Mosely* v. *Jamison*, 71 Miss. 456; *Sheedy* v. *McMurtry*, 44 Neb. 499;

*Wright* v. *Wright,* 70 N. Y. 96; *Mercer* v. *Graves,* L. R. 7 Q. B. 499.

Such a settlement is not "to be viewed with suspicion," as charged by the trial court; and the burden of proof upon the point of fraud in the transaction and notice is upon the person attacking the settlement: *Simmons* v. *Almy,* 103 Mass. 33; *Clark* v. *Smith,* 6 Mann. & G. 105; *Parker* v. *Blighton,* 32 Mich. 266; *Hutchinson* v. *Pettes,* 18 Vt. 614.

The plaintiff is not the real party in interest, within the meaning of 1 Hill's Ann. Laws, p. 148, § 27, and the action should be dismissed: *Hoagland* v. *Van Etten,* 22 Neb. 681; *Grimes* v. *Cannell,* 23 Neb. 187; *Abrams* v. *Cureton,* 74 N. C. 523; *Botswick* v. *Bryant,* 113 Ind. 448; *Rock County National Bank* v. *Hollister,* 21 Minn. 385; *Iselin* v. *Rowlands,* 30 Hun. 488.

For respondents there was a brief over the name of *McMahon & McGinn,* with an oral argument by *Mr. Michael J. McMahon.*

MR. JUSTICE WOLVERTON, after stating the facts, delivered the opinion of the court.

The principal question suggested by the controversy is touching the assignability of claims of laborers, the preferment of which the enactment is designed to promote. No contention is made but that the claimants might each for himself have prosecuted an action in his own name of the nature here adopted to establish his individual claim; but it is insisted that the preference which the law raises is a privilege strictly personal to the claimant, and one

which he alone can exercise; that the mode or process by means of which he may avail himself of the privilege is specifically pointed out by statute, and, being a procedure unknown to the common law, it should be strictly followed in the establishment of the preferential right, and, until fully perfected, it is not in any event assignable. The statute, in so far as it concerns the case at bar, is, in effect, that hereafter, whenever any assignment for the benefit of creditors shall be made, the debts owing to laborers or employees, which have accrued by reason of their labor or employment, to an amount not exceeding $100 to each employee for work and labor performed within ninety days next preceding the assignment, shall be considered and treated as preferred debts, and such laborers and employees shall be preferred creditors, and shall first be paid in full; but, if there be not sufficient to pay them in full, then the same shall be paid to them *pro rata* after paying costs. Any such laborer or employee desiring to enforce his claim for wages under sections 1, 2, and 3 of this act, shall present a statement under oath, showing the amount due after allowing all just credits and set-offs, the kind of work for which said wages are due, and when performed, to the assignee, within thirty days after the property shall have been placed in the hands of such assignee. (The form of the statement is given, and runs in the first person.) Thereupon he shall serve upon the debtor, or upon his assignee where personal service cannot be had, a copy of such claim, and thereafter it shall be the duty of the assignee to report the amount of such claim or claims to the court having

jurisdiction, together with a statement of all costs oc-
casioned by the assignment; and such court shall
order said claims to be paid after payment of costs
and expenses of the assignment, out of the proceeds
of sales of the property assigned; provided, that any
person interested may contest such claim or claims,
or any part thereof, by filing in said court exceptions
thereto, supported by affidavit; and thereupon the
claimant shall be required to establish his or her
claim by judgment in such court before any part
thereof shall be paid. When any claim is excepted
to, the person desiring to establish the same shall
file in said court his verified complaint as in an ac-
tion at law, and serve the same upon the person ex-
cepting and the principal debtor, and thereafter the
cause shall proceed to final judgment between said
parties as an action at law. Section 2 provides for
the adjustment of costs and attorney's fees, and sec-
tion 3 that the assignee shall not be discharged until
every claimant presenting his or her claim under the
provisions of the act shall have been paid in full, or
*pro rata*, or shall have consented to the discharge.

1.    The act creates a new right, and prescribes a
remedy for its enforcement. In so far as it imposes a
burden upon specific property, it should be strictly
construed; but, where the right is clearly given, the
interpretation should be such as will promote, rather
than impede or destroy, the remedy, so as to meet, if
reasonably within the terms of the statute, the exigen-
cies which impelled the enactment. In other words, a
remedy is the concomitant of a right; and, where a
new right is established, its usefulness depends upon

the means of its enforcement, so that, when the legislature attempts to prescribe a remedy, it will be presumed that it intended to adopt such a one as will effectuate the purpose, and the interpretation of the remedial enactment will be such as to promote the intendment as fully as the language employed will admit. The undoubted purpose of the act was to constitute the laborer or employee a preferred creditor, as it pertains to the property of his employer seized upon by any process, or passing to a receiver or assignee. Under all the conditions enumerated, the property is placed in *custodia legis*, and thereafter it is administered in pursuance of law; and the act in question imposes an additional burden upon it, and subjects it first, after the payment of certain costs, to the payment of the labor claims designated. The enactment does not create a lien, but invests the laborer or employee with the rights and privileges incident to the relation of preferred creditor, and directs the order of his payment out of a fund which is already in the custody of the law for the purpose of administration, in subordination to its rules and regulations. The act declares that hereafter, when the property of any person shall be seized, etc., such laborers or employees "shall be preferred creditors, and shall first be paid:" Laws, 1891, p. 81, § 1. Thus, the legislature has inseparably coupled the preference with the event which inures instanter, upon the happening thereof, to the benefit of the designated classes. It is a substantive right, created by edict, and not the right to acquire it by the doing of certain things or the observance of any conditions. The property is charged, *ipso facto* the hap-

pening of the seizure or the assignment, with the prior payment of the debts of laborers or employees which have accrued under the conditions contemplated.

With the right or preference thus clearly established, it remains to examine the manner of its enforcement, and to determine to what extent the remedy must be pursued as a personal privilege. Manifestly, the statute comprehends only such debts as are owing to the laborers or employees at the date of the seizure or assignment, and these debts are denominated "claims for wages." Now, it is provided that any such person desiring to enforce such a claim shall, in case of an assignment, present a statement, made out and verified in the form and manner prescribed, to the assignee, within thirty days after the property has been placed in his hands, and serve a copy upon the debtor. Such is the method by which a claimant may avail himself of his preference. Thus far it would seem that the privilege is personal to the laborer or employee, as he may adopt the remedy if he desires, within the statutory period, or he may waive it as a debtor may waive the exemptions from seizure upon execution, by not claiming them in due season from the officer having the property in charge. When a claim is thus presented, a duty is devolved upon the assignee to report it to the court, and upon the court to direct its payment out of the proceeds of the sale of the property, first after the payment of the costs and expenses of the assignment. But it is further provided that any person interested may contest such a claim by filing exceptions thereto, and thereafter it is made incumbent upon the claimant to establish the

31 Or.—10.

same by filing a verified complaint, as in an action at law, and that thereafter the cause shall proceed to judgment between the parties. We take it that the matter which is here made the subject of litigation and contest is the 'debt, and it is the province of the court to determine the nature, and what, if any, of such debt has accrued and remains unpaid; but whether or not the claim has been properly made out or verified or presented, and whether within the prescribed time, are purely questions of law, that have necessarily to be passed upon, whether there is a contest or not. So that the purpose of the contest is not to establish the preference but the claim. The preference is established when the privilege is exercised by a due presentment 'of the verified statement. Now, it will be conceded that the claim, aside from the preference, which may be denominated a "personal privilege," is assignable, and, under the code practice, may be sued upon by the holder in his own name; but, when the privilege is exercised, the preference becomes an incident of the debt, which is thereby constituted a preferred claim, and, when the debt is assigned, the incident accompanies it. So, we see no reason why the assignee of the debt may not file a complaint in his own name to establish the claim, as he might do upon the simple demand, and, if established, the preference abides with it still, as an incident.

The question whether statutory liens are assignable, or, if so, whether the action should be prosecuted in the name of the assignor, has but little to do with the present case. It is merely a question here whether a preferred claim of the class created

by the enactment is assignable, so as to entitle the assignee to prosecute the action in his own name to establish the debt, its nature and amount, if contested; and we are of the opinion that it is. The right of exercising the privilege in claiming the preference we hold to be personal, but, when exercised by the presentation of the statement, the preference becomes an incident of the debt or claim for wages, and may be asssigned;* and henceforth the action may be prosecuted in the name of the legal owner and holder of the claim if contested. This interpretation is manifestly in consonance with the spirit of the act. It was designed to protect a deserving class of individuals, who are usually dependant upon their recent earnings for the sustenance of themselves and those dependant upon them, and it was undoubtedly the purpose of the legislature to make the wages of labor speedily available, and the assignment of their preferred claims would more frequently promote the purpose than otherwise. We cite the following authorities as tending to support the view we here entertain: *The Victorian Number Two*, 26 Or. 194 (46 Am. St. Rep. 616, 41 Pac. 1103); *Duncan* v. *Hawn*, 104 Cal. 10 (37 Pac. 626); *Murphy* v. *Adams*, 71 Me. 113 (36 Am. Rep. 299); *Skyrme* v. *Occidental Mining Company*, 8 Nev. 220; *Chicago & N. E. R. Company* v. *Sturgis*, 44 Mich. 538 (7 N. W. 213); *Day* v. *Vinson*, 78 Wis. 198 (10 L. R. A. 205, 47 N. W. 269); *Kinney* v. *Duluth Ore*

*NOTE.—This subject is carefully reviewed in a monographic note to *Kinney* v. *Duluth Ore Company*, 49 Am. St. Rep. 580. See also notes to *The Victorian Number Two*, 46 Am. St. Rep. 616, and *Mills* v. *La Verne Land Company*, 33 Am. St. Rep. 171. These notes show the distinction between assigning a right to a lien for labor and materials and assigning the right to enforce such a lien after it has been perfected by filing a notice, and classify the authorities under each head.—REPORTER.

*Company*, 58 Minn. 455 (49 Am. St. Rep. 528, 6 N. W. 23); *Kerr* v. *Moore*, 54 Miss. 286; Phillips on Mechanics' Liens, § 55.

2. That the claims were assigned for collection does not destroy their validity nor deter the holder from suing in his own name: *Roberts* v. *Parrish*, 17 Or. 583 (22 Pac. 136); *Young* v. *Hudson*, 99 Mo. 102 (12 S. W. 632); *Allen* v. *Brown*, 44 N. Y. 228; *White* v. *Stanley*, 29 Ohio St. 423; *Boyd* v. *Corbitt*, 37 Mich. 52.

3. As a defense to the action, the defendant pleads a settlement with the plaintiff touching the claims in question, and full payment and satisfaction in accord therewith. The plaintiff, replying, denied the settlement, but alleged that, if any such was had, it was obtained by fraud and without consideration. After the defendant had given evidence touching the settlement, the plaintiff, for the purpose of showing that, when defendant was attempting to negotiate the settlement, he had full notice and knowledge of the capacity in which plaintiff was acting touching such claims, offered in evidence an agreement between M. J. McMahon, the attorney engaged to prosecute the claims, and himself, whereby it was agreed that no assignment, sale, or transfer of any interest in said claims should be made by plaintiff, and that the proceeds, when collected, should be distributed or paid to the assignors under the supervision and control of the attorney, and also another paper, purporting to be a notice of attorney's lien filed in the cause, which were received over the objections of the defendant. Thereafter the court instructed the jury touching the alleged settlement and allegation of fraud in relation thereto as follows:

"When parties have gone to law about a matter, they may settle between themselves without the intervention of an attorney on either side, or with an attorney on one side, if they see fit to do so, but after an action is commenced, and the parties appear with an attorney in court, any settlement of the claim out of court without the knowledge or consent of the attorney is to be viewed with suspicion. If there is any fraud in the case, such a settlement may be set aside." This the defendant excepted to, and these constitute the two remaining questions to be disposed of.

The agreement and the notice of lien were properly admitted in evidence. The issue was whether the settlement was fraudulent, having been, among other attendant circumstances, negotiated in the absence of the attorney who was, under the agreement, directly charged with the supervision of the distribution of the proceeds after collection. The agreement tended to show the plaintiff's position and authority in the premises, and it and the notice of lien were pertinent to disclose the relations and interest of the attorney in the transaction. And it appearing that the defendant had knowledge of the existence of these instruments, and even of their contents, prior to the alleged settlement, they were significant in this connection as tending to show an apparent disregard of the rights of interested parties. Nor was the instruction objectionable. In *Bussian* v. *Milwaukee R. R. Co.*, 56 Wis. 335 (14 N. W. 453), TAYLOR, J., says: "We think that no release obtained from the plaintiff after an action has been commenced and counsel employed, in the absence of the plaintiff's counsel, and without his con-

sent or knowledge, should bind the party unless the utmost good faith is shown on the part of the defendant in obtaining the same. When a party has employed an attorney to prosecute an action, such attorney ought to be consulted if a compromise of such action be sought, and ordinarily it would be an act of bad faith on the part of the client and the opposite party to compromise the action without the consent of or without consulting such attorney." The language of the instruction is no stronger than this. It is evident the defendant knew of the attorney's employment, and of the supervisory control over the distribution of the proceeds of the collection accorded him under his agreement with the plaintiff; and it seems to us that the language of the learned judge, that "any settlement of the claim out of court without the knowledge or consent of the attorney is to be viewed with suspicion," was especially adapted to the controversy. See also *Watkins* v. *Brant*, 46 Wis. 419 (1 N. W. 82).

AFFIRMED.