## HERMAN CONST. CO. v. WOOD.

No. 1497.   Opinion Filed December 3, 1912.

(128 Pac. 309.)

1. **ATTORNEY AND CLIENT—Contingent Fee—Lien.** By reason of act of the Legislature, entitled ''An act to provide for attorney's liens upon a client's cause of action,'' etc., approved March 4, 1909 (Sess. Laws 1909, p. 117), a client may contract with his attorney to pay his attorney a percentage or portion of the proceeds of his cause of action, not to exceed 50 per centum of the net amount of such judgment as may be recovered or such compromise as may be made with the consent of his attorney; and, where such contract is made, the client may not, without notice to and consent of his attorney, compromise his cause of action with the adverse litigant so as to bind the attorney in the amount of fee he is to receive or to affect or abrogate his lien therefor.

2. **SAME—Settlement by Client—Rights of Attorney.** Where such a contract between attorney and client has been made and a set-

tlement or compromise of the cause of action by the client and adverse litigant had without notice to and consent of the attorney, the attorney within one year after he becomes aware of such compromise may prosecute a separate suit against the adverse litigant for the fee due him or that would have become due him under his contract of employment, if the cause had been prosecuted to judgment, not to exceed the percentage of the amount to be sued for as stipulated in his contract; and, at the trial of such action, the attorney may introduce evidence to establish the merits of his client's cause of action and the amount he would have been entitled to receive, if same had been prosecuted to judgment.

(Syllabus by the Court.)

*Error from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

Action by Bert G. Wood against the Herman Construction Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Jas. S. Ross* and *H. M. Peck* (*A. Van R. Schermerhorn* and *James L. Powell,* of counsel), for plaintiff in error.

*Bert G. Wood, O. T. Gilbertson, Benjamin Martin* and *Moss, Turner & McInnis,* for defendant in error.

*S. T. Bledsoe, amicus curiae.*

HAYES, J.   This case involves the construction and validity of an act of the Legislature of 1909 (Sess. Laws 1909, c. 4), commonly known as the Attorney's Lien Statute.   Since a construction of the entire statute is necessary to the construction of those portions of it directly involved in this proceeding, we feel justified in setting out the entire statute, which is as follows:

"An act to provide for attorneys' liens upon a client's cause of action, authorizing contracts between attorneys and clients, and providing for the enforcement of such liens.

"Be it enacted by the people of the state of Oklahoma:

"Section 1.   From the commencement of an action at law or equity or from the filing of an answer containing a counterclaim, the attorney or attorneys who represent the party in whose behalf such pleading is filed shall have a lien upon his client's cause of action or counterclaim, and same shall attach to any verdict, report, decision, finding or judgment in his client's favor, and the proceeds thereof, wherever found, shall be subject to such lien and no settlement between the parties without the approval

of the attorney shall affect or destroy such lien. Such lien shall attach from and after such attorney is contracted with, provided such attorney serves notice upon the defendant or defendants, or proposed defendant or defendants, in which he shall set forth the nature of the lien he claims and extent thereof, or from and after the service of such notice. Such notice shall not be necessary, provided such attorney has filed such pleading in a court of record, and indorsed thereon his name, together with the words 'lien claim.'

"Sec. 2. It shall be lawful for attorneys to contract for a percentage or portion of the proceeds of a client's cause of action or claim, not to exceed 50 per centum of the net amount of such judgment as may be recovered, or such compromise as may be made with the consent of the attorney, whether the same arise *ex contractu* or *ex delicto,* and no compromise or settlement entered into by a client without such attorney's consent, shall affect or abrogate the lien provided for in section 1 hereof, which lien shall apply to all contracts mentioned in section 2 hereof.

"Sec. 3. Should the party to any action or proposed action, whose interest is adverse to the client contracting with an attorney, settle or compromise the cause of action or claim wherein is involved any lien, as mentioned in the preceding section hereof, without the attorney having notice and an opportunity to be present at such settlement, such adverse party shall thereupon become liable to such attorney for the fee due him or to become due under his contract of employment, and such attorney may enforce any lien provided for by this act in any court of competent jurisdiction by action filed within one year after he becomes aware of such compromise.

"Sec. 4. Should the amount of the attorney's fee be agreed upon in the contract of employment, then such attorney's lien and cause of action against such adverse party shall be for the amount so agreed upon. If the fee be not fixed by contract, the lien and cause of action, as aforesaid, shall be for a reasonable amount for not only the services actually rendered by such attorney, but for a sum, which it might be reasonably supposed, would have been earned by him had he been permitted to complete his contract; and such attorney may present, upon the hearing, the facts essential to establish the merits of the cause in which he was employed. Should the contract be for a contingent fee and specify the amount for which action is to be filed, then the lien and cause of action as aforesaid shall be for the percentage of the amount to be sued for, as mentioned in said contract.

"Approved March 4, 1909."

The facts out of which this case grows are: That in July, 1908, one W. S. Acy, while in the employment of plaintiff in error, hereinafter referred to as defendant, and while engaged in constructing a sewer ditch in the city of Muskogee, was injured by falling off one of defendant's scaffolds used in constructing the sewer ditch. On the 5th day of August, 1909, defendant in error, hereinafter called plaintiff, as attorney of W. S. Acy, brought a suit in behalf of Acy in the superior court of Muskogee county against defendant for the sum of $5,000 damages for injuries alleged to have been sustained by Acy in said accident. Thereafter Acy settled and dismissed his suit with prejudice on the payment to him of $125 by an agent of a casualty company which had insured defendant against all legal liability for' damages on account of personal injuries sustained by its employees. Subsequently, on the 8th day of September, 1909, plaintiff filed this suit against defendant to recover the sum of $2,500 and to enforce his alleged attorney's lien for that amount on Acy's cause of action. In addition to alleging substantially the foregoing facts, plaintiff further alleged that, before filing the suit on behalf of Acy, he had entered into a contract with Acy to bring the suit against the defendant for $5,000 damages, with a stipulation in the contract that he should receive for his services as attorney 50 per cent. of the amount recovered by judgment, or by compromise made with his (plaintiff's) consent, and that claim of lien was indorsed upon his petition. He alleged that the settlement made with Acy was made without plaintiff's consent and without notice to him or opportunity to be present. He later amended his petition, so as to pray for judgment only in the sum of $1,995.

After defendant had filed a demurrer and answer to the amended petition, there was a trial to the court without a jury, who found the facts for plaintiff and rendered judgment in his favor for the sum prayed for. All the questions of law presented by this appeal are raised by defendant's demurrer to plaintiffs petition, which the trial court overruled, and those questions are: First, what cause of action and lien does the statute give plaintiff against defendant? Second, is the statute valid?

A construction of the statute presents some difficulty. Plaintiff now contends, and contended before the trial court, that, when he established that he had a contract with Acy by which he was to receive 50 per centum of the net amount of such judgment as might be recovered or such compromise as might be made with plaintiff's consent, that suit had been filed and a notice of the lien given and a compromise thereafter made by defendant with Acy without the consent of plaintiff or notice to him thereof, the last sentence of section 4 operated to create a fixed liability against defendant in favor of plaintiff for 50 per centum of the amount for which the suit was brought, being the same amount named in his contract with Acy. The judgment of the trial court sustains this contention; but we are of the opinion that such is not the effect of the last sentence of section 4, when construed with the other provisions of the act, which must be done. That sentence reads as follows:

"Should the contract be for a contingent fee and specify the amount for which the action is to be filed, then the lien and cause of action as aforesaid shall be for the percentage· of the amount to be sued for as mentioned in said contract."

This sentence by its own terms shows that it is to be construed in connection with the preceding provisions of the statute, for reference to preceding provisions is twice made in the sentence, in that it speaks of the "lien and cause of action as aforesaid," and specifies that the recovery shall be "for the percentage of the amount to be sued for as mentioned in said contract." "Aforesaid lien and cause of action" refers to the lien and cause of action created by the preceding sections of the statute; and "the percentage of the amount to be sued for, as mentioned in said contract," refers to that portion of the statute authorizing contracts for contingent fees and limiting the percentage for which such contracts may be made. Section 1 of the act creates a lien in favor of the attorney upon the cause of action from the commencement of any action at law or in equity or from the filing of an answer containing a counterclaim, and this lien passes over and attaches to the verdict, report, decision, finding, or judgment in favor of the attorney's client and the proceeds thereof, wherever found, and no settlement between the party without the

approval of the attorney affects or destroys such lien.   The coun-
terpart of this provision of the statute as contained in the first
sentence of the section is to be found in the statute of other
states, notably in Missouri and New York, where such statute
has been construed to give the attorney a lien upon his client's
cause of action, which follows and attaches to any settlement
made by his client as well as to any judgment that may be ren-
dered in the cause; but that such provision does not prevent the
client from settling without the consent of his attorney, and any
settlement made by him in good faith binds his attorney as to
the amount of compensation the attorney is to receive under his
contract, but does not affect the attorney's lien upon such settle-
ment to secure the payment of his fee.   *O'Connor v. St. Louis
Transit Co.,* 198 Mo. 622, 97 S. W. 150, 115 Am. St. Rep. 495,
8 Ann. Cas. 703; *Taylor et al. v. St. L. Transit Co.,* 198 Mo.
715, 97 S. W. 155; *Peri v. N. Y. Cent. & Hud. Ry. Co.,* 152 N.
Y. 521, 46 N. E. 849; *Carl Fisher-Hansen v. Brooklyn Heights
Ry. Co.,* 173 N. Y. 492, 66 N. E. 395.   See, also, *Railway Co.
v. Wells,* 104 Tenn. 706, 59 S. W. 1041.

The second and third sentences of section 1 have no bearing
upon the extent of the lien created or the attorney's rights there-
under, except to provide that the lien may attach at any time
after contract is made with the litigant and before suit, provided
the attorney serves notice upon the defendant, setting forth the
nature of the lien he claims and the extent thereof.   Without
such notice, the lien attaches upon commencement of the action,
if the attorney indorses upon his pleading his name, together with
the words "lien claim."

Section 2 authorizes attorneys and litigants to enter into
contracts of employment by which attorneys are to be paid a con-
tingent fee.   The maximum amount of the fee contracted for
shall not exceed 50 per centum "of the net amount of such judg-
ment as may be recovered or such compromise as may be made
with the consent of the attorney."   It is to be observed that this
section does not authorize a contract for a per centum of the
amount to be sued for.   The latter part of this section makes
the lien provided for by section 1 attach and follow fees con-

tracted for under section 2, and also provides that no compromise or settlement, entered into by a client without his attorney's consent, shall affect or abrogate such lien.   If this section had provided only that an attorney may contract for a percentage of the judgment recovered in any action, we should hold, in harmony with the decisions of other courts construing similar statutes, that the statute being a remedial one should be liberally construed; and that the rights of the attorney to his fees and his lien to secure same would attach to any settlement made before judgment, but his client could settle without his consent and by such settlement fix in accordance with the percentage of the contract the amount of the attorney's fee; but the legislators of this state have added the additional clause or of "such compromise as may be made with the consent of the attorney."   This clause intended to add something to the force of the statutes as generally found in other states, and does, we think, authorize the attorney to contract for a contingent fee and to secure the payment of same gives him a lien upon his client's cause of action, and the amount of such fee is to be determined by the percentage of the judgment finally secured or of a compromise which is made with his consent; and any compromise made without his consent shall not operate to determine the amount of his fee or to destroy his lien upon the cause of action to secure the payment of the same.   This construction of the section is supported not only by the language of the section, but by the language of the subsequent sections of the act.   The provisions of section 3 by specific language therein are made to apply to contracts made under section 2.   Under that section when a settlement is made by a defendant with a plaintiff, without notice to plaintiff's attorney and opportunity to be present and without his consent, the defendant thereupon becomes liable to such attorney "for the fee due him or to become due him under his contract of employment."   What is the fee due him, or to become due him under his contract of employment made under section 2 of the act?   It is a fee for a stipulated per centum of the judgment or "of compromise as made with the consent of the attorney."   There having been no compromise with the consent of the attorney, but one made without his con-

sent, the attorney's right of action is for the fee measured by the stipulated percentage of the judgment his client was entitled to recover; and the last clause of section 3 provides a procedure for the recovery of such fee by authorizing the attorney to prosecute in any court of competent jurisdiction an action filed within one year after he becomes aware of such compromise for the collection of such fee and enforcement of the lien to secure the same.

Section 4 continues to outline the procedure that an attorney is authorized to pursue for recovery of his fee when a settlement has been made without his consent. The first sentence provides for those cases in which the contract between attorney and client is for a specified sum. The second sentence provides for those cases in which there is no agreement as to the fee, and the third and last sentence as to contracts stipulating for a contingent fee. If the last sentence be construed as plaintiff contends for, then it will be in conflict with the provisions both of section 2 and of section 3; for section 3 provides that an attorney serving for a contingent fee, where settlement has been made without his consent, may bring his action to enforce his lien for the sum due him or to become due him under his contract, which, in this case, is 50 per centum of any judgment obtained. Again, such literal construction renders said sentence in conflict with section 2 and of doubtful meaning, if not impossible application, because it provides that the lien and cause of action "shall be for the percentage of the amount to be sued for as mentioned in said contract," contemplating under plaintiff's construction that the contract provides for a percentage of the amount sued for; but section 2 does not authorize such a contract and authorizes a contract only for a percentage of the judgment recovered or compromise made with the attorney's consent. The intention of the lawmakers by this section, we think, was to provide as to this class of contracts, in connection with said section 3, that the attorney, where settlement has been made without his consent, may bring his action against the adverse litigant for an amount not to exceed the percentage of the amount sued for and recover to the extent only that he may show upon the trial his client was

entitled to recover; and, for the purpose of enforcing his lien, he may in a suit therefor produce evidence as to the merits of his client's cause of action and to establish the amount to which he was entitled to recover, and therefrom ascertain the fee the attorney would have been entitled to receive and would have become due under his contract, had the cause been prosecuted to final judgment, and thereby secure judgment against the adverse litigant for such sum.

That such procedure is contemplated by the statute is indicated by the provisions of section 3 that the attorney's cause of action and lien shall be for the fee due him, or "to become due him under his contract of employment." The second sentence of section 4 distinctly authorizes such a procedure, where there is no contract. fixing the fee, in that it provides that "the attorney has his lien and cause of action for a reasonable amount for not only the actual service rendered by such attorney, but for a sum that might be reasonably supposed would have been earned by him had he been permitted to complete his contract"; and at the trial he may present the facts essential to establish the merits of his client's cause. Such a procedure is not entirely a novel one, for the enforcement and collection of an attorney's fee. Courts have, in the absence of any statute prescribing any such procedure and in the absence of any statute attempting to prevent the settlement by a litigant of his cause of action without consent of his attorney, so as to bind his attorney as well as himself, when a settlement has been made in collusion and fraud, prejudicing the attorney in the collection of his fee, permitted the settlement to be set aside and the attorney to prosecute his client's cause of action to judgment, in order to enforce the collection of his fee; or where, after a judgment has been obtained, a settlement of the judgment has been collusively and fraudulently made between the litigants for the purpose of cheating the attorney out of his fee, the courts have set aside such settlement and permitted the attorney to enforce the collection of his fee by an execution. *Cline Piano Co. v. Sherwood*, 57 Wash. 239, 106 Pac. 742; *Martin v. Smith et al.* (Ky.) 110 S. W. 413; *Falconio v. Larsen*, 31 Ore. 137, 48 Pac. 703, 37 L. R. A. 254; *Grand Rapids & I. Ry. Co. v.*

*Cheboygan Circuit Judge,* 161 Mich. 181, 126 N. W. 56, 137 Am. St. Rep. 495.

The statute under consideration has extended the foregoing rule so that when a settlement is made by a client of a cause of action on which his attorney has a lien and an interest therein to secure him compensation for his services, without consent of the attorney such settlement does not bind the attorney as to the amount of fee he shall receive, where the contract is for a contingent percentage of the judgment recovered or of settlement with the attorney's consent; but such attorney may prosecute a separate action against the adverse litigant who has settled with notice of the attorney's interest to recover as his fee the sum that he would have received had the action of his client proceeded to final judgment; and in so doing he may establish the merits of his client's cause of action. The change this statute effects, so far as we know, is not to be found in the statute of any other state, and is subject to the criticism of being novel that has been made by counsel; but legal history discloses that the development of the law has been attended by several changes in the law regarding fees of attorneys. In early times an attorney could not charge a fee, and was dependent for compensation for his services upon the gratuity of his client. This rule was modified to the extent that the court charged as costs in the case a fee for the prevailing party, known as attorney's fee, which in fact was for the benefit of the client's attorney. Later the law permitted attorney and client to contract for a fee and stipulate the amount thereof, but did not permit contingent fees, and fees made dependent upon the success of litigation were declared void as against public policy; but in many of the states of the American Union this rule has been changed by statute, and in some of the states such contracts are permitted in the absence of statute until now reason could be found to sustain such contracts in the absence of a statute as not being any longer against public policy; but the statute here involved specifically provides for a contingent fee, and upon the foregoing question we need not pass.

Nor is the statute to be declared invalid because in violation of public policy, as contended for by plaintiff in error. Contracts

are struck down by the courts when they are found to be in contravention of public policy; but statutes may not, under the weight of authority, be invalid for such reason. The public policy of a state is determined by its Constitution, its statutes, and the decisions of its courts. The statutes in the main make the public policy of the state. The wisdom or lack of wisdom of any policy is for legislative determination, over which the courts have no jurisdiction, except in so far as any statute violates a constitutional provision.

In *Railway Co. v. Wells, supra,* the statute under consideration was in some respects similar to the one here involved. In answer to the contention that it was invalid because it tended to encourage litigation and prevented a defending litigant from purchasing his peace, the court said:

"Whether it tends to encourage litigation, and thereby violates sound public policy, the court is not prepared to say; nor, indeed, is it allowable for the court to consider that question as in any manner affecting the constitutionality of the act. Under the organic division of the functions of government, the policy or impolicy of a given act is a matter for the final decision of the General Assembly as an essential part of its exclusive power of legislation, and the judiciary is precluded from entering that domain."

Unless the statute violates some express provision of the Constitution, it must be valid. Section 85, Lewis' Sutherland, Statutory Const., and authorities there cited.

Nor does any reason appear to us upon which the statute should be held invalid, upon the ground that it takes the property of either the client or defendant without due process of law or denies to either of them the right to contract. The statute authorizes a person who has a cause of action against another to assign a valuable interest therein or lien upon it to secure an attorney for his compensation for services. In authorizing him to make such a contract, it also provides that, when such a contract has been made, he cannot thereafter act in a manner so as to affect the rights of the attorney without the attorney's consent. A defending litigant is not prevented from settling with a plaintiff as to such cause of action; but, in doing so, he must respect

the right of plaintiff's counsel therein, and he cannot destroy or affect those rights. He settles with plaintiff with full notice of plaintiff's attorney's lien; he deals with it not differently than if he were purchasing from plaintiff a horse upon which the attorney has a lien and of which the defendant has notice. No contract they can make can affect the lien of attorney on the horse or the value of the horse for the purpose of enforcing that lien. We can understand, as has been stated by counsel for plaintiff in error, that this statute may hinder a defendant from purchasing his peace where unprofessional attorneys insist upon a settlement that the cause of action does not merit, and will enable such attorneys to oppress persons against whom actions without merit are brought; but this argument directs itself to the policy of the statute. As an answering argument thereto, which, no doubt, was in the minds of the legislators at the time of the enactment of this statute, the frequent practice of claim agents or some of them, by which they take advantage of the ignorance and poverty of litigants who have causes of action for damages to settle same in the absence of their attorneys and in ignorance of their full rights in the premises, is an equally reprehensible practice. Neither system as thus abused can be commended, and both are attended with evils. All these considerations, however, must be deemed to have been weighed by the Legislature, and it has to determine which of the two it regards the greater, and its action forecloses any judgment of this court thereon.

It follows, for the foregoing reasons, that the judgment of the trial court should be reversed, and the cause remanded for further proceedings in accordance with this opinion.

All the Justices concur.