## MATHEWS v. SMITH et al.

No. 23282.    Nov. 27, 1934.

Walter Mathews, in pro. per.

N. E. McNeill, for defendant in error Glenn J. Smith.

Simons, McKnight, Simons & Mitchell, for defendant in error Eason Oil Company.

J. E. Denton, R. H. Wills, and I. L. Lockewitz, for defendant in error Cosden Oil & Gas Company.

PER CURIAM. On July 10, 1928, Mrs. N. B. Norman by written contract of that date employed Walter Mathews, an attorney of Cushing, Okla., to prosecute an action to recover for her the E.½ of N.W.¼ of section 22, township 7 north, range 5 east, Seminole county, Okla., agreeing to pay as attorney fee therefor—

"* * * the equal one-third interest in said land; or in case a judgment is recovered or a compromise is had on a money basis, then to pay such attorney one-third of the money recovered or received, but if recovered on a compromise of such cause, the one-fourth thereof. * * *

"Such attorney to receive no other compensation for his services in and about said suit."

Pursuant to said contract Walter Mathews filed in the district court of Seminole county, on July 10, 1928, an action on behalf of N. B. Norman against Glenn J. Smith and others for the recovery of said lands, and indorsed upon the petition, "Lien claim by Walter Mathews, Atty. for Plaintiff."

Sometime thereafter settlement proceedings were initiated, and there followed telephone conversations and an exchange of letters between Walter Mathews, as attorney for the plaintiff, Mrs. Norman, and N. C. McNeill, as attorney for the defendant Glenn J. Smith. On April 9, 1930, McNeill phoned Mathews an offer of $1,000 in full settlement. On April 10th Mathews conferred with his client, who agreed to said settlement provided the money was paid within one week and deed and instrument of dismissal were executed. On April 11th Mathews phoned McNeill of his client's acceptance, subject to payment within one week. On April 14th Mathews wrote McNeill as follows:

"I have never heard anything more from you respecting the compromise of the case of Norman v. Smith et al. As I phoned you I have the quitclaim deed and the dismissal duly executed by my client and can close the matter at any time. But my client insists that the matter be taken care of at once, and I am afraid if it is not, she will demand more money.

"Please let me hear from you at once as to what you intend to do in the matter."

On April 18th Mathews and his client again conferred and destroyed the executed instruments. On April 19th Mathews wrote McNeill, advising of this action, but stating his client would sign new papers if a settlement could be had within the next week.

On April 25th McNeill wrote Mathews the following letter:

"In Re: Norman v. Smith

"Dear Sir:

"The Collins matter (meaning the Norman case) is now ready to straighten out and we can close the entire matter Wednesday. If you do not want to make the trip and still have the deed, if you will call me I will instruct you how to draw the draft and attach the dismissal with prejudice and the deed, or if you would rather you can meet us at Wewoka Wednesday morning. Please let me know what you will do."

This letter Mathews answered on the 26th as follows:

"As I wrote you on the 19th inst., Mrs. Norman came in and demanded the deed and dismissal, and they were torn up by me in her presence. Therefore it will be necessary to have new ones executed by her. I am mailing the deed and dismissal to her for her signature with a request that if she desires to settle this matter to sign and return them to me.

"You did not say whether you would meet my proposition in the letter above referred to, or whether it is the old price. So far as I am personally concerned, I am anxious to stay with the old proposition, even though I do not get my actual expenses. That was really the promise I made my client in order to get her to accede to the proposition before. But inasmuch as they would not let me keep the papers, but seemed inclined to put me at as much trouble and embarrassment as possible, I frankly told them I would not accede to any proposition except on a basis of where I could get some fee out of it. I am telling my client in the letter to sign and return the papers with a statement of the amount of money she wants net to her, and that they will only be delivered when I receive that amount of money plus my fees and expenses.

"Will say that it will be impossible for me to be in Wewoka on the 30th as I have a case set for trial in Oklahoma City that day. However, it will not be necessary for me to be there or to draw a draft, for when we agree on the amount I will just send the papers over and you can mail me a

check. Just as soon as I hear from my client will write you."

At the same time Mathews sent the following letter to his client:

"April 26, 1930.

"Mrs. N. B. Norman,

"Konawa, Oklahoma.

"Dear Friend:

"A day or two after you were here I wrote Judge McNeill what you said about settling our case. Today he wrote me he would settle with us on the 30th inst., but did not say what he would give, but I assume it was his old proposition. At any rate I think this is our very last chance to settle this case. I wrote him today if he would accede to the proposition in my letter, calling his attention to the fact he did not say whether he would or would not. Of course, in my letter of today I told him that the very last word I had from you was that you wanted $750 net to you, and therefore I would have to get enough additional to repay my expenses with a small fee.

"I believe I can get $1,000 gross in settlement of the matter, but should you insist upon having $750 net out of it would only leave me $250 or less than the actual expense I have been out in the case. I cannot now accede to a settlement unless I get a reasonable fee say of $250 out of the case. I am certain that I can settle for the above sum which would leave you $500 net, which sum I will guarantee you will receive whether I get my fee or not. Of course, if I can possibly get the $750 net for you I will do so. And I will not attempt to settle for a cent less than you authorize me in writing to settle for either in gross or net to you, and the money will be sent to you and no one else.

"I am enclosing herewith a quitclaim deed and a dismissal which if you will sign before witnesses and a notary public just as you did the others and send to me, along with the amount of money you will want either net or gross, indicating which, I will see that they are not delivered until that amount of money is paid. I will want you to tell me in your letter just how much I am to settle for. But I am very frank to say that I do not believe we can ever settle for more than $1,000 gross. And, if we do not settle this time there will be no use of trying a further settlement, in fact, I would not want to waste any more time or trouble trying to settle.

"With very best wishes to all, I remain,

"Sincerely your friend,

"Walter Mathews."

On April 30th McNeill met Mrs. Norman and her son-in-law at Wewoka for the purpose of completing settlement of her case. At that time she exhibited the Mathews letter and advised she was ready to settle; McNeill and her son-in-law then phoned Mathews, and thereafter deed and stipulation were executed and delivered and the money paid. The stipulation is as follows:

"N. B. Norman, Plaintiff, v. Glenn J. Smith et al., Defendants. No. 12005.

"Stipulation.

"It is hereby stipulated by and between the plaintiff, N. B. Norman, in her own behalf, and the defendant, Glenn J. Smith, by his attorneys Ira C. Saunders and N. E. McNeill in the above-entitled action; that whereas heretofore the plaintiff through her attorney Walter Mathews and the defendant through his attorneys reached a tentative oral agreement to settle and compromise the above-entitled cause by the defendant Glenn J. Smith paying to the plaintiff and her attorney, Walter Mathews, the sum of $1,000, it being understood that said settlement was to be consummated at Wewoka, Okla., on the 30th day of April, 1930.

"And whereas the said plaintiff received a letter from her said attorney, Walter Mathews, dated April 26, 1930, advising her of said purported settlement a copy of said letter being hereto attached, and marked Exhibit 'A' and made a partial hereof.

"And whereas the said plaintiff and the defendants and their attorneys met at Wewoka, Okla., on this 30th day of April, 1930, and the said Walter Mathews not being present the said N. E. McNeill called the said Walter Mathews regarding said settlement and the said plaintiff through her son-in-law, N. J. Farley, talked to said Walter Mathews regarding said settlement, and the said Walter Mathews agreeable to said settlement but insisted upon being paid an attorneys' fee of $500, and the said Walter Mathews advised the said N. E. McNeill that the settlement for $1,000 was satisfactory providing he received a fee of $500.

"And whereas a dispute has arisen between the said N. B. Norman and Walter Mathews regarding the amount of attorneys' fee that the said Walter Mathews shall receive.

"And whereas the plaintiff is desirous of settling and compromising said litigation for the said sum of $1,000, and whereas the defendant Glenn J. Smith is willing to compromise said litigation by the payment of the sum of $1,000.

"It is, therefore, stipulated and agreed by and between the plaintiff, N. B. Norman, and the defendant Glenn J. Smith that the said cause of action between the plaintiff and all the defendants be compromised and settled for the sum of $1,000, to be paid as follows, to wit:

"A. The sum of $500 in hand paid by Glenn J. Smith to the said plaintiff, receipt of which is hereby acknowledged.

"B. The sum of $500 this day paid to the

clerk of the district court of Seminole county, state of Oklahoma, by the said Glenn. J. Smith, which sum is to be held by the said clerk for the use and benefit of the said N. B. Norman and Walter Mathews. To be held and not paid out until the said Walter Mathews and N. B. Norman have adjusted and settled the amount of fee due the said Walter Mathews or as the district court may direct the same to be paid to the said parties or either of them.

"It is therefore stipulated and agreed that the said cause of action of the said plaintiff against these defendants and each of them be dismissed with prejudice at plaintiff's cost. The court, however, to retain jurisdiction of said case for the ·purpose of adjusting the differences between the plaintiff and her attorney, said Walter Mathews, in regard to the attorneys' fee and in ordering the distribution of the $500 this day paid to the court clerk.

"Dated this 30th day of April, 1930.

"N. B. Norman
"N. E. McNeill
"Attorneys for Glenn J. Smith."

On May 29th, the defendant, Glenn J. Smith, filed the following motion in said cause:

"Comes now the defendant Glenn J. Smith and moves the court to require the plaintiff to complete the settlement in the above-entitled case for the following reasons, to wit:

"First. That said plaintiff and defendant agreed upon a settlement of the above-entitled cause and the said defendant paid to the plaintiff the sum agreed upon as follows: $500 to said plaintiff, and deposited $500 with the court clerk of Seminole·county, Okla., to be divided between the plaintiff and her attorney, Walter Mathews, as the court may direct.

"Second. That the said defendant has paid the full sum agreed upon by the said plaintiff and defendant and·is entitled to a dismissal of said cause.

"Wherefore, this movant prays that this motion be sustained and that the said plaintiff be required to accept the settlement heretofore agreed upon.

"Neal E. McNeill,
"I. C. Saunders,
"Attorneys for Glenn J. Smith."

On July 14, 1930, the following proceedings were had with reference thereto:

"Be it remembered that the above-styled and numbered cause came on for hearing on this the 14th day of July, 1930, and the following proceedings were had and done, to wit:

"The Court: Let the record show that this case has been dismissed with prejudice, as

per stipulation filed, that, however, there has been deposited with the court clerk the sum of $500 to be distributed by agreement among or between the parties, or on order of the court.

"Walter Mathews is in court at this time, who formerly represented the plaintiff in this case, and who is, as a matter of fact, attorney of record in the case, as well as Mr. Walter Billingsley. At this time, let the record show, Mr. Mathews states in open court that he claims no lien or makes no claim to the $500 now on deposit with the court clerk, under the stipulation, and he expects to rely upon his statutory rights as attorney's lien in the collection of his fee. Is that correct, Mr. Mathews?

"Mr. Mathews: Yes, sir.

"The Court: It is therefore ordered that the court clerk pay to the plaintiff the $500 in his possession.

"The defendants appearing by Judge N. E. McNeill and Mr. I. C. Saunders.

"W. J. Crump."

Thereupon Walter Mathews, on September 13, 1930, filed his petition in the district court of Seminole county against Glenn J. Smith and others for the recovery of and the quieting of title to an undivided one-third interest in the lands involved in the Norman suit. The defendants answered on October 4th, and plaintiff replied on December 15th. All the facts hereinbefore recited appear as admitted facts in the pleadings.

Plaintiff in his petition alleged that he was a duly licensed attorney, pleaded his contract with Mrs. Norman, the bringing of the suit contemplated by· the contract, the indorsement of "lien claim" upon his petition, and the settlement and dismissal of the suit, and alleged the same were without notice and without the consent or approval of plaintiff. Plaintiff attached as exhibits the contract, the petition filed in the Norman case, and the stipulation of settlement.

The defendants pleaded a general denial; deraigned their title; recited the filing of suits and claims clouding their title; denied that settlement was made without the knowledge and consent of plaintiff, and then pleaded certain of the facts preceding, accompanying, and succeeding the final settlement and dismissal of the suit; alleged plaintiff under his contract was entitled only to one-fourth of any money obtained in settlement and by reason of his disclaimer in the Norman suit was estopped as against the defendants; alleged the Norman suit was without merit and pleaded facts with reference thereto; and denied that Glenn J. Smith or his attorney acted for any other

defendant in the Norman settlement. Defendants attached as exhibits the stipulation, the April 26th letter of Mathews to Mrs. Norman, the motion in the Norman suit, and the court proceedings had thereon.

Plaintiff in his reply sets out in some detail telephone conversation and letters, denied any agreement on his part for the paying of $500 to the court clerk, pleaded that the defendants were estopped to assert $500 fixed the measure of their liability, and were estopped to assert Mrs. Norman would not have recovered in her suit; and alleged lack of jurisdiction in the court in the Norman case to determine his fee.

On July 17, 1931, the cause came regularly on for trial. The defendants moved for judgment upon the admitted facts pleaded in the petition, the separate answer of the defendants, and the reply of the plaintiff, and the court thereupon sustained said motion and rendered judgment for the defendants and dismissed plaintiff's cause of action. The cause is regularly here for review.

As the parties on appeal sustain the same relationship to each other as in the trial court, they will be referred to in this appeal as plaintiff and defendants, respectively.

Plaintiff assigns as error the sustaining of defendants' motion for judgment on the pleadings by the trial court and the judgment rendered pursuant thereto.

Plaintiff in his brief urges that the order of the court returning the impounded $500 to N. B. Norman was not res adjudicata in this action and his conduct would not lead defendants to believe he had waived his statutory attorneys' lien against them; urges that if the allegations of his pleadings established a prima facie case, it was error to sustain the motion for judgment on the pleadings; and argues that if not entitled to recover an interest in the land, he still was entitled to recover the $500, and have it impressed as a lien upon the land.

Defendants first urge that the judgment should be affirmed because plaintiff had failed to comply with rule No. 26 of the court, requiring an abstract of the pleadings, etc.; and then urge that the plaintiff did not bring himself within the letter or spirit of C. O. S. 1921, sections 4100-4103 (4204-7, O. S. 1931) for the reason that the original case was not compromised without the knowledge and consent of the plaintiff or without an opportunity of being present to protect his fee; that N. B. Norman had authority to settle, and plaintiff had no right to prevent a settlement by demanding a

fee different from that expressed in his contract; that the trial court in the Norman case had jurisdiction to adjudicate the fee as between plaintiff and his client, and when plaintiff appeared in that case and disclaimed any lien on the $500, he admitted himself out of court.

It is unnecessary to discuss all of these propositions. A consideration of the primary one will dispose of the case. That proposition is: Did the plaintiff approve or consent to the settlement between his client, N. B. Norman, and the adverse party, Glenn J. Smith.

The subject of attorney's lien is covered by sections 4100-4104, inclusive, C. O. S. 1921 (sections 4204-4208, O. S. 1931).

The attorney's lien statutes were originally passed by the Legislature in 1909. There were four sections. Section 1 provided for the lien and section 2 authorized contingent fee contracts. These two sections without material alteration became sections 4100-4101, C. O. S. 1921, sections 4204 and 4205, O. S. 1931. The clauses, "no settlement between the parties without the approval of the attorney shall affect or destroy such lien," and "no compromise or settlement entered into by a client without such attorney's consent shall affect or abrogate the lien," appear in the exact words in sections 4100 and 4101, respectively.

Section 3 dealt with the liability of an adverse party and made the adverse party liable where settlement was made "without the attorney having notice and an opportunity to be present at such settlement." It was carried into the Revised Laws of 1910 as section 249, and materially amended. As amended, the adverse party became liable for reasonable compensation where he made settlement "without a satisfaction of the attorney's claim." The section was amended again materially in 1919, and without further change became section 4102, C. O. S. 1921 (section 4206, O. S. 1931). It reads as follows:

"Should the party to any action or proposed action, whose interest is adverse to the client contracting with an attorney, settle or compromise the cause of action or claim wherein is involved any lien, as mentioned in the preceding section thereof, such adverse party shall thereupon become liable to such attorney for the fee due him or to become due him under his contract of employment. * * * Such attorney may enforce any lien provided for by this act in any court of competent jurisdiction by action filed within one year after he becomes aware of such compromise, or judgment may be rendered on his motion in the case in the court in which the suit was brought."

Section 4 prescribed the amount of recovery from the adverse party. It was omitted from the Revised Laws 1910, but was re-enacted with changes by the Legislature in 1919 and became section 4103, C. O. S. 1921 (section 4207, O. S. 1931). It contains the following words:

"But the fact of settlement shall be sufficient without other proof to establish that the party making the settlement was liable in the action."

The plaintiff in this action contracted with Mrs. Norman in conformity with section 4100, C. O. S. 1921 (4204, O. S. 1931). He perfected his lien in accordance with section 4101. He attempts to recover from the defendants under sections 4102 and 4103 (4206-7, O. S. 1931).

It is well settled that if Glenn J. Smith et al., as the adverse parties in the Norman suit, compromised or settled that suit without the approval or consent of the plaintiff, acting as attorney for Mrs. Norman, then plaintiff's lien was unimpaired, and he could proceed against them for the collection of his attorney's fee. Sections 4100-4103, C. O. S. 1921, sections 4204-4207, O. S. 1931; Herman Construction Co. v. Wood, 35 Okla. 103, 128 P. 309; Chowning v. Ledbetter, 86 Okla. 269, 208 P. 829; Cooper et al. v. Jackson et al., 104 Okla. 277, 231 P. 223; Orwig v. Emerick, 107 Okla. 134, 231 P. 234; Callahan v. Cowley & Riddle, 117 Okla. 58, 245 P. 48; Western States Oil & Land Co. et al. v. Helms et al., 143 Okla. 206, 288 P. 964; Boulding et al. v. Slick et al., 161 Okla. 189, 17 P. (2d) 391; Bruce et al. v. Anderson et al., 161 Okla. 248, 18 P. (2d) 877.

It is, however, also settled that if a suit is compromised or settled by the client and adverse party, with the approval or consent of the attorney, then the attorney cannot maintain an action against the adverse party for the enforcement of an attorney's lien and the collection of his fee. This is the reasonable and necessary construction to be placed upon these attorney's lien statutes.

Sections 4102 and 4103, standing by themselves and narrowly and strictly construed, might seem to place upon the adverse party an absolute liability where he participates in a compromise or settlement regardless of whether the settlement was with or without the consent of the attorney. The saving clauses found in sections 4100 and 4101, "settlement * * * without the approval of the attorney" and "settlement * * * without such attorney's consent," do not appear.

The qualifying clause found in section 3 of the 1909 Laws has been omitted. These two statutes seem to boldly announce that the adverse party is liable under all conditions if he settles.

Such a meaning could never have been intended by the Legislature, and such a construction could not be permitted to stand. It would violate section 7, article 2, of the Constitution, in that it would make a proof of settlement a conclusive presumption of liability, and thereby deny a defendant his right to be heard (Orwig et al. v. Emerick, 107 Okla. 134, 231 P. 234); it would inhibit settlement of cases, thereby being contrary to public policy (Callahan v. Cowley & Riddle, 117 Okla. 58, 245 P. 49); it would violate the spirit and intent of attorney's lien laws, which are solely to protect the attorney from secret, collusive settlements, and to prevent him from being cheated and defrauded thereby, but which are not intended to prevent settlement of suits with the consent of the attorneys.

We must construe these sections in the light of the language in the companion sections, 4100 and 4101 (4204-5, O. S. 1931) and have in mind the object and purpose of such laws and the necessity for reasonableness and harmony. These statutes, therefore, under proper and reasonable construction, protect the adverse party where settlement is made with the approval or consent of the attorney.

This construction of these statutes and statement of the law is also well supported by the cases cited above. In each case there had been a proceeding against the adverse party, and the basis of the claim for recovery was a settlement without notice or settlement without consent. In each case the plaintiff assumed the burden of pleading and proving a settlement without notice or consent. In each case the court either assumed that this was plaintiff's burden or required it of him. In Cooper et al. v. Jackson et al., supra, the court says:

"Under the statute aforesaid (section 4102, C. O. S. 1921), under which this action was brought, it was necessary for plaintiffs to show that such former suit had been compromised and settled without notice or opportunity for plaintiffs to be present and present the case on its merits."

So, also, in Western States Oil & Land Co. et al. v. Helms et al., supra, we hold that:

"In a suit by an attorney against his client and an adverse party to recover an attorney's fee under the provisions of sec-

tion 4102, supra, the question to be determined is: Did the client and the adverse party, without notice to the attorney, perfect an arrangement that deprived the client of his rights to prevail against the adverse party in the litigation?"

The court and litigants in these cases have read into sections 4102 and 4103 the qualifying clauses found in sections 4100 and 4101, and now it is well settled that recovery can be had from the adverse party only when settlement is made without the approval or consent of the attorney. Conversely, if the settlement is approved of or consented to, then no recovery can be had.

We are led back then to our original proposition. Did Walter Mathews, the plaintiff, approve or consent to the settlement consummated between his client, Mrs. Norman, and the adverse party, Glenn J. Smith? It it is our conclusion, after carefully reviewing the record, that the plaintiff did approve and consent to the settlement.

It is true that the plaintiff had not reached a definite agreement with his client as to how much of this $1,000 settlement he was to receive for his fee. In one letter he asked for "some fee out of it"; in another, he suggested "a reasonable fee say of $250"; in a telephone conversation, he asked for $500. There was a lack of agreement between attorney and client as to their respective shares of the $1,000 under the employment contract—that was one thing. But the settlement was another and different thing, and we have no doubt as to the agreeableness of the plaintiff to the settlement, and are convinced that he approved of and consented to it. It was the confusing of these two separate matters evidently that caused plaintiff to mistake his remedy.

It can further be said that the defendant Glenn J. Smith complied fully with the spirit of the attorney's lien laws. Plaintiff was at all times advised of all proceedings relative to the settlement. He was requested by letter to be present at Wewoka for the final consummation of the settlement. He was called over the telephone before the signing of the stipulation. One-half of the money to be paid under the settlement and representing the maximum that plaintiff had claimed, was by this defendant retained from the client and placed within the reach of the plaintiff; and this defendant did not ask the court to dismiss the case until after notice to plaintiff and his appearance in court. Every reasonable effort was made by this defendant to protect the plaintiff in his claim to his fee. Then plaintiff appeared in court, released

his claim to the $500, and consented that the same be paid to Mrs. Norman.

Holding, therefore, that the plaintiff approved and consented to the settlement, the trial court committed no error in rendering judgment for the defendants, and the judgment therefore is affirmed.

The Supreme Court acknowledges the aid of Attorneys Clarence Lohman, Robt. Stuart, and F. W. Files in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Lohman, and approved by Mr. Stuart and Mr. Files, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.