Argued January 23, reversed March 19, 1929.

# THEODOR KNUDSON *v.* IDA M. KNUDSON.

(275 Pac. 663.)

636

For appellant there was a brief over the name of *Mr. Charles J. Michelet* with an oral argument by *Mr. Joseph H. Page.*

For respondent there was a brief over the name of *Mr. G. C. Fulton* with an oral argument by *Mr. A. C. Fulton.*

ROSSMAN, J.—March 1, 1926, while the plaintiff and defendant were living together as husband and wife, they deemed it advisable to adjust their property rights. Under these circumstances they subscribed their signatures to the following instrument:

"This agreement made and entered into this the first day of March, 1926, by and between Theodore Knudson and Ida M. Knudson,

WITNESSETH; That whereas said parties are husband and wife and having encountered such difficulties in their married life that they find it neces-

sary to separate and desire to make a settlement of all property rights between them,

Now, therefore, it is hereby mutually agreed between said parties that the said Theodore Knudson shall have as his own, and his sole and separate property, the property known as the Broadway property located on the corner of East Broadway and East Ninth Street, now standing in the names of both of these parties and being in the City of Portland, Multnomah County, Oregon, together with the proceeds of the sale of said property, and the furniture and contents thereof. Mrs. Ida M. Knudson is to have as her own and her sole and separate property, the property known as the Seaside property, located in Clatsop County, Oregon, and also the property known as the Morris Street property, standing in her name of Ida M. Johnson, located in Portland, Multnomah County, Oregon, and the proceeds of any sale thereof.

It is further agreed that each party will duly sign and execute any and all deeds and other papers necessary or proper to carry this agreement into effect, and in case a divorce is obtained by either party hereafter this property settlement and agreement shall be conclusive and binding as to both parties, and neither one shall make any further claim upon the other in connection with, or in regard to any of said property.''

1. At that time, the title to the Seaside property was vested in the defendant; she had acquired it prior to her marriage. The mortgage, which the plaintiff seeks to foreclose, was an encumbrance upon that property. The defendant had executed the note and mortgage prior to her marriage, and the plaintiff later acquired those instruments. After the consummation of the above agreement the parties executed the necessary deeds to fulfill the covenants of their contract. Some days later the plaintiff filed a suit for a divorce; one of the allegations of his com-

plaint is the following: "There are no property rights to be settled between them." The findings of fact in this suit are to similar effect. It is the contention of the defendant that the effect of the above agreement was to satisfy the mortgage owned by the plaintiff; the latter contends that his note and mortgage were unaffected by the agreement, and that he is now at liberty to foreclose the mortgage debt; for that purpose he instituted this suit. There is no evidence that any other property, owned by the parties, was omitted from their agreement. It will be observed from a reading of the memorandum of agreement that the document recites that the parties were settling "all property rights between them." The word "property" has been repeatedly defined as a term of very broad signification, embracing everything that has exchangeable value, or goes to make up a man's wealth; in fact the courts frequently say that "property" is *nomen generalissimum,* and extends to every species of value, right and interest: *Fishburn* v. *Landershausen,* 50 Or. 363 (92 Pac. 1060, 15 Ann. Cas. 975, 14 L. R. A. (N. S.) 1234); 6 Words & Phrases (3d series), 241. The word "property" was so understood in an agreement settling the property rights between husband and wife: *Coley* v. *Coley,* 94 S. C. 383 (77 S. E. 49). While the instrument before us expresses a purpose to make a settlement of all the property rights between the parties, the plaintiff contends that the debt at that time owing from the wife to the husband, and secured by a mortgage upon property in her name, was unaffected by the settlement. A debt has been frequently defined as being property. 6 Words & Phrases (3d series), 249; *In re Daly's Estate,* 100 App. Div. 373 (91 N. Y. Supp.

858). A right to enforce a debt is necessarily a property right. It is axiomatic that a note, mortgage, or similar instrument is property. Bouvier's Law Dictionary, Baldwin's Revision, 995. Thus, it is clear, that when the parties in the prelude to their agreement expressed their "desire to make a settlement of all property rights between them," they employed words capable of including the note and mortgage, which the plaintiff now asserts was unaffected by the contract.

2. We believe, that the phraseology employed in expressing the parties' agreement necessarily implies the discharge of the note and mortgage. It will be observed that they agreed, that the defendant "is to have as her own and her sole and separate property," the realty upon which the plaintiff now undertakes to foreclose his mortgage. Next, it provides "that each party will duly sign and execute any and all deeds and other papers necessary or proper to carry" the agreement into effect. Continuing, the agreement makes provision that in case a divorce is obtained by either party "this property settlement and agreement shall be conclusive and binding as to both parties, and neither one shall make any further claim upon the other" in regard to any of the property. The stipulation that the defendant should "have as her own and her sole and separate property" that which is involved in this suit, is out of harmony with the contention of the plaintiff that he reserved in it a mortgage lien to secure the debt evidenced by the note; in this state it is elementary that a mortgage creates a lien in favor of the mortgagee. The plaintiff contends, that the contract adjusted between the parties only their dower and curtesy rights

in the property mentioned in the agreement; this construction ill befits those provisions of the agreement which expressly mention "the furniture and contents" of the building upon one of the properties; and which point out that the title to another of the properties was vested in the names of both parties, and made provision for the adjustment of that situation by a conveyance to the plaintiff. We, have already mentioned the fact that in the plaintiff's complaint, seeking a divorce, he alleged that there were no property rights which needed the adjustment of the court. Another incident occurred at about the same time, which also indicates that the plaintiff believed that the agreement discharged the debt; the agreement provided for the preparation of such documents as were necessary to effectuate the purpose of the agreement; such being the situation the defendant felt she was entitled to a return of the note and mortgage so as to be possessed of evidence of their discharge; she testified:

"Q. And have you ever asked him for the note since your divorce was granted in Oregon City? A. Yes, I have, many times, and he would always have some excuse for not giving it to me. I even had my lawyer write to him about it to see what he had done in the matter."

This evidence the plaintiff did not deny.

The parties entered into this marriage after each had reached middle life. Both were possessed of children of mature years by previous spouses. Their marriage had continued for several years only. This property settlement agreement had been preceded by others, which were soon canceled due to their unsatisfactory provisions. Under these circumstances, we

believe it is unreasonable to assume that they undertook to adjust a portion of their property rights only.

3. When the minds of the parties had met, they made written evidence of their purposes, intent, and disposition of property rights by subscribing to the document previously referred to. It is now our duty to ascertain their meaning as therein expressed. In so doing, we know of no source of interpretation safer than the language of the instrument itself, except possibly the words of the plaintiff found in his complaint in the divorce suit, wherein he swore that no property rights needed adjustment; obviously none remained for the court's disposition because the parties had completely settled them a few days previously. The language of the instrument and the plaintiff's subsequent language satisfy us that the disposition of the several pieces of property effected a discharge of the note and mortgage; we so hold.

4, 5. We come now to the contention of the defendant that she is entitled to recover the sum of $100 damages mentioned in Section 9891, Or. L. It will be observed from a reading of that section that the $100 is recoverable only after the following circumstances have occurred: (1) performance of the condition of the mortgage; (2) a request for a satisfaction of the mortgage records; (3) a tender to the mortgagee of his reasonable charges; (4) the latter's failure for a period of ten days' time to enter a satisfaction. The defendant concedes that she never presented to the plaintiff for his execution an instrument of satisfaction, and never tendered to him the clerk's charges for a marginal mortgage release. Since by the terms of Section 9891 the $100 is recoverable in addition to "all actual damages" occasioned by the neglect or

refusal of the mortgagee to enter the satisfaction we are justified in construing this provision of the statute as a penal one, and in applying the rules of strict construction: 41 C. J., Mortgages, p. 817, § 797; Jones on Mortgages (7 ed.), § 990. It is the duty of a debtor who demands evidence of the satisfaction of the mortgage to prepare the necessary instrument for the creditor's execution, and if satisfaction is to be entered on the margin of the record, to offer to pay the expenses thereof. Jones on Mortgages (7 ed.), § 988. It is quite likely that the plaintiff would have refused to execute an instrument of satisfaction had one been offered; and from the fact that he instituted this suit we assume that a tender of the statutory charges for a marginal release would not have induced him to satisfy the mortgage records. But, since penal statutes are strictly construed, we believe that the $100 exemplary damages are recoverable only when the debtor has not the full requirements of the act. Since the defendant at no time tendered an instrument of satisfaction for the plaintiff's signature, and never offered to pay the expenses of a marginal release, we conclude that she is not in a position to recover the $100 exemplary damages. The defendant may, however, recover her costs and disbursements in this court.

The decree of the lower court is therefore reversed, and the cause is remanded to the Circuit Court with instructions to enter a decree in favor of the defendant in harmony with the above conclusion.

REVERSED.

BEAN, RAND and McBRIDE, JJ., concur.