Argued May 2, affirmed August 29, 1950

# McGINNIS ET AL. *v.* KEEN

221 P. (2d) 907

446

*Charles R. Cater*, of La Grande, argued the cause and filed a brief for appellant.

*Edward E. Grant,* of Enterprise, argued the cause for respondents. With him on the brief were Dixon & Burleigh, of La Grande.

Before Lusk, Chief Justice, and Brand, Rossman and Latourette, Justices.

## ROSSMAN, J.

This is an appeal by the defendant from a judgment of the Circuit Court which was entered in an action brought by the plaintiffs to recover wages which they claim had become due them, and a statutory penalty for the alleged failure of the defendant to have paid the wages. Our only source of information about the controversy is the amended complaint, a motion filed thereto by the defendant, the order which overruled the motion and the judgment in favor of the plaintiffs. The amount of the judgment is $402.30, costs, disbursements and an attorney's fee in the sum of $150.00. The motion reads as follows:

"The defendant respectfully requests the Court to make an order striking from the plaintiffs' amended complaint the following portions thereof on the ground that the same are irrelevant, redundant and immaterial:

"Paragraphs IV and V and that portion of the prayer thereof referring to attorney's fees and any amount in excess of $231.52 general damages."

The assignments of error are the following:

"The Circuit Court erred in failing to sustain defendant's motion to strike Paragraphs IV and V of the plaintiffs' amended complaint."

"The amended complaint is insufficient to sustain the verdict and judgment where the verdict and judgment include an amount as penalty."

■ Undoubtedly the appellant's counsel is familiar with the rule that the disposition of motions, such as the one he submitted to the Circuit Court, is largely a matter of discretion, and not reviewable upon appeal unless an abuse of discretion is shown: *Cole v. Willow River Company*, 60 Or. 594, 117 P. 659, 118 P. 1030; 5 C. J. S., Appeal and Error, p. 478, § 1587; 3 Am. Jur., Appeal and Error, p. 526, § 964. We assume that the first assignment of error is intended as ancillary to the second, and not as a separate contention within itself.

Paragraphs I and II of the amended complaint allege:

"Defendant employed plaintiffs to work for him as fallers and buckers * * * and agreed to pay plaintiffs for said services at a rate based on the number of board feet of logs felled and bucked by plaintiffs jointly, to-wit: the sum of $2.50 per thousand board feet."

"In pursuance of said employment agreement, plaintiffs entered upon the performance of their duties and worked for defendant as fallers and buckers until on or about the 1st day of April, 1948, at which time the work for which plaintiffs were employed was completed."

Continuing, the paragraph says that from March 1, 1948, to and including April 1, 1948, the plaintiffs felled and bucked 318,530 board feet of logs and thereby earned $796.32.

According to Paragraph III, the plaintiffs, on April 1, 1948, "completed their employment with said defendant and the wages then earned became immediately due and payable." The paragraph states that although the plaintiffs endeavored to demand payment of their

wages, their efforts failed because the defendant had left the State. Further parts of this paragraph allege that later, when the defendant displayed an interest in meeting his obligation, he refused to pay anything more than the sum of $564.80, which the complaint concedes he paid May 7, 1948.

The following are paragraphs IV and V:

"IV. That for more than thirty days following the completion of the work for which plaintiffs were employed by defendant, the defendant failed and refused to furnish to plaintiffs a statement of scale or quantity of logs produced by them as required by Section 102-605, O. C. L. A. and that for more than thirty days following the completion of said work defendant wilfully failed and refused to pay the wages or compensation due and owing to plaintiffs, although said defendant was financially able to pay such wages; that the employment of plaintiffs by the defendant had terminated by mutual agreement of plaintiffs and defendant because of the completion of the work; that under the terms of Section 102-604, O. C. L. A., as amended by Oregon Laws, 1947, Chapter 193, Section 1, plaintiffs are entitled to wages from the 1st day of April, 1948, when such wages were due and payable, for a period of thirty days, and the sum of $796.32 is due, owing and unpaid from the defendant to the plaintiffs under the terms of said statute, in addition to the sum of $231.52, making a total of $1,-027.84, and that said sum is due, owing and unpaid to plaintiffs from defendant."

"V. That proper demand has been made by plaintiffs upon defendant for the payment of the wages due, owing and unpaid to them; that said wages remain due and unpaid as set forth hereinbefore; that the sum of $150.00 is a reasonable sum to be allowed by the court as attorney's fees in this action for the use and benefit of the plaintiffs."

The prayer follows:

"Wherefore, plaintiffs demand judgment against defendant in the sum of $1,027.84 with interest thereon at six (6%) per cent per annum from the 1st day of May, 1948, until paid and for the further sum of $150.00, plaintiffs' reasonable attorney's fees * * *."

Thus, according to the complaint, the plaintiffs earned in the period of March 1, 1948, to April 2, 1948, $796.32 and were paid $564.80 on May 7, 1948. If those figures are correct, a balance of $231.52 remained unpaid when the action was filed. The prayer seeks judgment for that balance, together with a statutory penalty of $796.32, being an amount equal to the wages earned in the thirty days immediately preceding the cessation of the employment.

The applicable parts of § 102-604, O. C. L. A., as amended by Oregon Laws 1947, Chapter 193, are:

"Whenever an employer discharges an employe, or where such employment is terminated by mutual agreement, all wages earned and unpaid at the time of such discharge shall become due and payable immediately; * * *.

"* * * In the event that an employer being financially able to pay shall wilfully fail to pay any wages or compensation of any employe who is discharged or who quits his employment, as in this section provided, then as a penalty for such nonpayment the wages or compensation of such employe shall continue from the due date thereof at the same rate until paid, or until an action therefor shall be commenced; provided, that in no case shall such wages continue for more than thirty days. * * *"

Section 102-605, O. C. L. A., provides:

"Every employer, * * * engaged in the business of logging * * * employing such employee or em-

ployees upon a piece work scale or quantity wage basis, shall furnish such employee or employees at least once monthly a statement of scale or quantity produced by him or them to his or their credit, and shall pay all wages or amounts so earned and due and payable under the law regulating pay days.''

Section 102-606 prescribes a criminal penalty for the violation of the section just mentioned.

In arguing in behalf of his assignments of error, the defendant sets forth nine reasons, which he terms points. He states the first of them in these words:

''No 'rate' is alleged in the amended complaint which would enable Court or jury to compute the amount to which plaintiffs might be entitled. The statute providing for penalty uses words 'at the same rate.' ''

The second of his points follows:

''The 'rate' referred to in the statute, Section 102-604, O. C. L. A., as amended, is a rate based upon a time basis such as a daily, weekly or monthly rate and not a rate based upon a piece-work or quantity basis which cannot be reduced to a time basis.''

The defendant argues the two points concurrently.

Section 102-604, O. C. L. A., as amended in 1947, is concerned with wages and compensation that have been earned by employees whose employment ceased in the various ways mentioned in the act. A preceding paragraph of this opinion quotes its material parts. It fixes a day when payment of remuneration must be made. As a spur to the prompt payment of the wages earned by one ''who is discharged or who quits his employment as in this section provided,'' the act provides that the ''wages or compensation of such employee shall continue from the due date thereof

at the same rate until paid, * * *," provided the employer is financially able to pay and wilfully fails to do so. The act grants the additional recovery "as a penalty for nonpayment."

The amended act appears to be concerned with the wages earned by all employees whose severance from their work occurred in any of the ways mentioned in the act. Unless some meaning to the contrary lurks in a word which needs construction, there is nothing in the statute which evinces a purpose to discriminate against the pieceworker. So far as we know, it is as necessary for him to receive his wages promptly as it is for the worker whose wages are calculated upon a time basis.

■ The compensation of the plaintiffs, it will be recalled, was not computed upon a time basis, such as an hourly, daily or monthly scale, but upon the rate of "$2.50 per thousand board feet"; that is, upon a piece or quantity basis. According to *Champion v. Hermitage Cotton Mills,* 98 S. C. 418, 82 S. E. 672, which was concerned with a penalty statute, "Wages may be measured by the piece as well as by the time employed. 40 Cyc. 240." By reverting to § 102-605, O. C. L. A., quoted in a preceding paragraph, it will be seen that employees who are engaged in logging and who are paid upon "a piecework scale" are entitled to the beneftis of "the law regulating paydays." Section 102-604, as amended, is a part of "the law regulating paydays" and, hence, it appears that the legislature intended that the piecework employee who works in the woods should have the benefit of § 102-604, as amended by the 1947 act. The defendant, however, argues:

"The rate referred to in the statute is a rate

measured per unit of time. The rate based upon a quantity basis cannot be reduced under the terms of the statute as now written to a rate based upon passage of time.''

We are aware of no reason for accepting as true the proposition contained in the first sentence, and know of no need for attempting to reduce ''the rate based upon a quantity basis'' into one ''based upon passage of time.'' The penalty recovery is not the amount which the employee seemingly would have earned had his employment continued, but is equal to the amount he earned in the period immediately preceding the cessation of his employment. Thus, if the penalty recovery extends over the entire permissible period of thirty days, its amount is the counterpart of the sum which the employee earned in the thirty days immediately preceding the cessation of his employment. We do not think that the legislature, in using the term ''at the same rate'', created any difficulty for those who are required to apply the act, nor do we think that the words just quoted indicate a purpose to exclude from the act all pieceworkers.

■ The third point follows:

''The allegations of the amended complaint failed to bring plaintiffs within the intent of the statute which grants the right to penalty only to an employee who is 'discharged or who quits his employment.' The plaintiffs are alleged to have completed the work for which they were employed and therefore, they neither were discharged nor quit employment within the statute.''

It is true that the sentence of the act which prescribes the penalty includes the words which the third point quotes. Those words are followed immediately, how-

ever, by these: "as in this section provided." The first sentence of the act says:

> "Whenever an employer discharges an employe, or where such employment is terminated by mutual agreement all wages earned and unpaid at the time of such discharge shall become due and payable immediately."

Thus, by referring, by means of the compendious phrase "such discharge", to employees who have been dismissed, and to others whose employment was "terminated by mutual agreement," the act shows that it deems termination of employment through mutual agreement as a discharge of the employee. Since that is true, the plaintiffs, by alleging "the employment of plaintiffs by the defendant had terminated by mutual agreement," brought themselves within the very word of the statute which the defendant deems controlling. There is nothing novel about speaking of an employee whose work ceased through its completion as discharged. In *Barrows v. Riss & Co.*, 238 Mo. App. 334, 179 S. W. 2d 473, the court said:

> "The term 'discharge' means to cease to employ. 14 C. J. S., Cease, 58, note 35; 26 C. J. S., Discharge, 330."

One whose employment ceased through the bankruptcy of his employer is deemed discharged: *In re Public Ledger*, 161 Fed. 2d 762. The defendant depends much upon *Missouri Pacific Railway Company v. Clement*, 207 Ark. 389, 181 S. W. 2d 240. However, the statute which the court applied in that case, unlike the one before us, did not employ the term "discharge" as including workers whose employment "terminated by mutual agreement."

■ Before considering the fourth point submitted

by the defendant we shall give our attention to some of the other contentions advanced by him.

The fifth point submitted is:

"Employers engaged in forest products industries on a piecework or quantity basis are not within the terms of 102-604, O. C. L. A., as amended, and the rules governing them are set out in another statute which provides a different penalty."

The other statute (as codified) which the defendant has in mind is § 102-605 and § 102-606, O. C. L. A. A previous part of this opinion states the essence of those sections of our laws. The former requires employers who pay on a piece or quantity basis in the logging and lumber industries to furnish each employee "at least once-monthly, a statement of scale or quantity produced by him or them to his or their credit." As we said in our consideration of the first and second points submitted by the defendant, § 102-605 also requires employers to pay their employees in conformity with "the law regulating paydays." From the fact just stated, we observed previously that the statute which the defendant deems controlling (§ 102-605) subjects employers such as the defendant to the requirements of § 102-604, O. C. L. A., as amended by the 1947 act. It is evident that §§ 102-604, as amended, and 102-605 are companion measures. The former specifies the day when wages of a worker whose employment has been terminated must be paid, and the latter makes provision so that a special class of workers, like the plaintiffs, will receive data showing how much they earned. We take note once more of the fact that after § 102-605 has made provision for the delivery of the statement showing earnings, it says that the employee shall be paid as required by amended § 102-604. The fact that § 102-606 prescribes a criminal penalty does

not, in our opinion, deny to a worker the civil penalty feature of § 102-604. The civil penalty is unavailable to coerce a laggard employer into furnishing to a logger or mill worker a statement showing the amount earned; hence, the need for the criminal penalty. Although the parties present no contention upon the subject, yet we believe that the criminal penalty prescribed in § 102-606, O. C. L. A., is not applicable to an employer who, in disregard of the requirements of § 102-605, O. C. L. A., fails to pay his employees their wages. Article I, § 19, Constitution of Oregon, says:

> "There shall be no imprisonment for debt except in case of fraud or absconding debtors."

By reverting to § 102-605, it will be observed that it renders it the duty of employers to pay "all wages or amounts so earned and due and payable under the law regulating paydays." It says nothing about fraud or absconding. It does not even employ the qualifying words "wilfully" and "financially able to pay", which are parts of the civil penalty section of amended § 102-604, O. C. L. A. We think that the part of § 102-605 which renders it the duty of an employer to comply with the law regulating paydays is not subject to the penalty prescribed in § 102-606, and that the only amercement available to spur dilatory employers to make timely payment of wages is the one exacted by § 102-604, as amended. We are satisfied that if the legislature had intended to deny the penalty provisions of amended § 102-604 to loggers and sawmill workers who work upon a piece or quantity basis, it would have written such a restriction into the statute. We do not believe that workers in the woods, such as the plaintiffs, are denied the benefit of § 102-604, O. C. L. A., as amended by Oregon Laws 1947, chapter 193.

■ The defendant's sixth point is:

"There is no sufficient allegation in the amended complaint of the time when wages became due, owing to the failure of the plaintiffs to negative the exception in § 102-604, O. C. L. A., as amended, that where termination of employment in seasonal commodities is caused by cessation or fluctuation in flow, wages become due on the next regular payday, and therefore, no definite time for any penalty to commerce to accrue is alleged for the reason that there is no allegation of any regular payday established by the defendant."

The part of amended § 102-604 which the defendant terms "the exception" is the following:

"* * * provided, that in establishments where perishable or seasonal commodities are processed or handled, when termination of employment results from fluctuation in or cessation of the flow of such perishable or seasonal commodities, such termination shall not be regarded as a discharge or termination by mutual agreement."

Obviously, the defendant's business did not consist of the handling of perishable or seasonal commodities. There was no occasion to negative the proviso.

■ The seventh point submitted by the defendant follows:

"The defendant in this case cannot be subjected to a penalty from the time the plaintiffs ceased to cut logs for him because amount due was not known at that time."

It will be recalled that this case is concerned with wages that were earned on a piece scale basis in the period of March 1 to and including April 1. Section 102-605, as we have seen, states that employers such as the defendant

"shall furnish such employee or employees at least once monthly, a statement of scale or quantity produced by him or them to his or their credit, and shall pay all wages or amounts so earned and due and payable under the law regulating paydays."

Under that statutory requirement, it was the duty of the defendant to have known the amount that was due when the employment was terminated by the alleged mutual agreement.

Defendant's point 8 follows:

"The statute, § 102-604, O. C. L. A., as amended, contemplates penalty only to individual employees, not to employees by groups and the right to a penalty is not assignable."

■ This is not a case of an assigned claim. The plaintiffs, according to the complaint, were the defendant's employees, and are suing in their own names for wages which they allege they earned under a joint contract for their services. Since they were jointly hired under a single contract, they properly joined as parties-plaintiff in a single action to recover their wages: *Barr v. Woodbury,* 136 Or. 647, 300 P. 497; *Pitts v. Crane,* 114 Or. 593, 236 P. 475; *Anderson v. East Oregon Lumber Co.,* 106 Or. 459, 211 P. 937. There is nothing in the governing statute which indicates a purpose to withhold the penalty from workmen who perform labor under a joint contract.

The ninth of the defendant's points reads as follows:

"Section 102-604, as amended, provides for collection of a penalty only by an 'employee', not by independent contractors and thus, plaintiffs, being independent contractors, are entitled to no penalty."

It must be borne in mind that our sole source

of information concerning the plaintiffs' status comes to us from the complaint, and that the only attack which the defendant made upon that pleading was by a motion to strike Paragraphs IV and V. A complaint is required to aver its matter in plain and concise language. It is not permitted to incorporate within itself the evidence. The production of the latter must wait until the day of the trial. According to the complaint, the "defendant employed plaintiffs to work for him as fallers and buckers * * * and agreed to pay plaintiffs for said services." Those words are appropriate to the delineation of an employer-employee relationship. They do not speak of an independent contractor status. The complaint contains many other expressions which herald an employer-employee relationship; for example, "employment agreement", "worked for defendant", "the work", "completed their work", "wages", "completion of the work", "completion of said work", "pay such wages", and "pay the wages or compensation". Further, the complaint, by expressly citing and relying upon § 102-604, O. C. L. A., as amended by Oregon Laws 1947, chapter 193, and § 102-605, O. C. L. A., makes it clear that the relationship which the plaintiffs were describing was that of employer and employee. "A party who has affirmatively averred facts sufficient to make a prima facie case is not ordinarily called on to plead matters of a purely negative nature." 41 Am. Jur., Pleading, page 350, § 84. If the defendant, after perusing the complaint, believed that it was ambiguous—and we do not think that it was—he could have moved for an order to make it definite and certain. Or, if he thought that it failed to allege an employer-employee relationship, and if he had the courage of his convictions, he could have submitted a demurrer. Having taken neither of

those courses, he now seeks, after trial, to present an issue which should be decided upon the evidence. We are certain that the complaint is sufficient.

The above disposes of all the defendant's points, with the exception of the fourth, which reads as follows:

> "Statutes such as 102-604 O. C. L. A., as amended, are to be strictly construed."

We will now consider that point.

Although amended § 102-604, O. C. L. A., makes provision for a penalty to be recovered in a civil action, we are by no means certain that the statute is a penal one. However, whatever may be its nature—penal or remedial—we have felt throughout that our paramount duty was to ascertain the legislative intent: § 2-217, O. C. L. A. We encountered no ambiguities in the statute, and experienced no doubts concerning its meaning which did not disappear upon a consideration of the act itself. The latter deals with commonplace subjects —wages, termination of employment and payday. Surely a measure can be written upon those matters without affording occasion to use the rules of statutory construction. We think that § 102-604, O. C. L. A., reveals its own meaning.

The above disposes of all issues submitted by the defendant-appellant. The attacked judgment is free from error, and it is affirmed.