Argued February 16, affirmed as modified May 18, petition for
rehearing denied September 14, 1955

## NORDLING *v.* JOHNSTON
283 P. 2d 994
287 P. 2d 420

318

*Warde H. Erwin* argued the cause for appellant. On the briefs were Boyd & Erwin, Portland.

*Sidney I. Lezak,* Portland, argued the cause for respondent. With him on the brief were Peterson and Pozzi, Portland.

Before WARNER, Chief Justice, and LUSK, BRAND and LATOURETTE, Justices.

LUSK, J.

This action was brought, pursuant to statute, to recover wages, a penalty, and attorney's fees. ORS 652.140; Oregon Laws 1947, ch 193 (ORS 652.150); OCLA § 102-607 (ORS 652.200). From a judgment for plaintiff based on a verdict of the jury the defendant has appealed.

The plaintiff alleged in his complaint that between June 5 and June 12, 1950, defendant employed the plaintiff, Walter Newman and John Jacobsen as "fallers and buckers" of certain timber near Vernonia, Oregon, at the agreed and stipulated wage of $2.50 per M of timber felled and bucked; $1.50 per M for all timber felled, and for trimming broken logs, commonly known as "breaks", $1.00 per M. It is alleged that Newman and Jacobsen assigned their claims to the plaintiff for collection.

There was evidence to support the foregoing allegations and evidence to support other allegations of the complaint respecting the amount earned under the contract by plaintiff and his assignors and the wilful failure of the defendant to pay the men the moneys earned by them in the prosecution of the work. The judgment included the statutory penalty and an attorney's fee.

■ The defendant assigns error to rulings of the court denying his motions for judgment of involuntary nonsuit and a directed verdict. One ground of these motions was a claimed fatal variance between pleading and proof because, it is said, the complaint alleges a several contract while the proof establishes a joint contract between plaintiff and his assignors, on the one hand, and the defendant, on the other. We agree that the proof establishes a joint contract, but we cannot concur in the view that the complaint alleges a several contract. *McGinnis v. Keen,* 189 Or 445, 221 P2d 907, is controlling. The agreement involved in that case was similar to the one under consideration here, and we held that the amended complaint alleged a joint contract. 189 Or 459. It is true that in the McGinnis case the action was brought in the names of the three wage earners, parties to the contract, instead of, as here, in the name of one of them to whom the other two have assigned their claims. It is the assignment which, according to the defendant's contention, evidences an intention to declare on a several, rather than a joint, contract. The argument is that, since the action must be brought in the name of the real party in interest (ORS 13.030), and since an action upon a joint contract must be brought in the name of all those jointly interested (*Pitts v. Crane,* 114 Or 593, 597, 236 P 475; *McGinnis v. Keen,* supra), plaintiff "must rely on a several contract when he pleads the assignment of two separate claims of Newman and Jacobsen." This does not follow, for the question whether the contract as alleged is joint or several cannot be affected by any subsequent unilateral acts of the plaintiffs, and, consequently, the allegations respecting the assignment of the claims of two of the parties to the contract will not convert the pleading

from a complaint on a joint contract to one on a several contract. If it be true, as is asserted, that a party to a joint contract cannot separately assign his cause of action based thereon, then there has been in fact no assignment and the result here is merely a defect of parties plaintiff. The plaintiff came into court litigating the claim arising on the joint contract on behalf of himself and the other two joint contractors. The defendant, it is true, might have successfully challenged this mode of proceeding. But the objection on account of a defect of parties must be taken by demurrer (ORS 16.260, 16.270) or answer; otherwise it is waived (ORS 16.330; *Blaser v. Fleck,* 96 Or 187, 189 P 637). So also of the statute which requires that the action shall be prosecuted in the name of the real party in interest. It "was enacted for the benefit of a party defendant, to protect him from being again harassed for the same cause. But if not cut off from any just offset or counterclaim against the demand, and a judgment in behalf of the parties suing will fully protect him when discharged, then is his concern at an end." *Sturgis v. Baker,* 43 Or 236, 241, 72 P 744. See, also, *Title & Trust Co. v. United States Fidelity & Guaranty Co.,* 147 Or 255, 263, 32 P2d 1035, and cases there cited.

██ In this case the assignors "freely participated in the maintenance of this action" and therefore "they will be bound by its result as completely as if it had been instituted in their names." *Title & Trust Co. v. United States Fidelity & Guaranty Co.,* supra, 147 Or 264. Defendant waived the objection by failing to interpose a special demurrer; the case was tried no differently than if all three of the joint contractors had been named as plaintiffs; and, as no prejudice to the rights of the defendant resulted, it would be

contrary to the modern judicial conception of the purposes for which procedural rules are established to give heed to the defendant's contention first made after the plaintiff had rested his case. For procedure is the "means whereby the court reaches out to restore rights and remedy wrongs; it must never become more important than the purpose which it seeks to accomplish." *Clark v. Kirby,* 243 NY 295, 153 NE 79, quoted with approval in *Sheppard v. Blitz,* 177 Or 501, 511, 163 P2d 519.

Closely related to the foregoing question is the defendant's claim of error going to the allowance in the judgment of the sum of $356.34 as a penalty. ORS 652.150 provides:

"If an employer, being financially able, wilfully fails to pay any wages or compensation of any employe who is discharged or who quits his employment, as provided in ORS 652.140, then, as a penalty for such nonpayment, the wages or compensation of such employe shall continue from the due date thereof at the same rate until paid or until action therefor is commenced; provided, that in no case shall such wages continue for more than 30 days."

Defendant urges that a claim for a penalty is not assignable. Plaintiff argues that the statute does not provide for a penalty but for liquidated damages, and that in any event the rule against assignment of a claim for a penalty does not extend to an assignment made solely for collection, as is the case here.

Defendant attempted to raise the question by a motion to strike certain paragraphs of the complaint on the ground that they are "sham, frivolous, irrelevant and redundant and are contrary to law." Paragraph IV, one of those moved against, contains allegations to the effect that defendant's failure to pay the

wages of the three men was wilful and stating the amount of the penalty for which defendant was liable. Paragraph V, which alleged the assignment to the plaintiff for collection of the claims of Newman and Jacobsen, was not moved against. One of the grounds of the motions for nonsuit and a directed verdict was that a claim for a penalty cannot be assigned.

Assuming that the question is properly before us, we consider first whether the provision is penal in character.

■ An accepted definition of a statutory penalty is that it is one which an individual is allowed to recover against a wrongdoer, as a satisfaction for the wrong or injury suffered, and without reference to the actual damage sustained. *Noble v. Martin,* 191 Wash 39, 70 P2d 1064; *Stevenson v. Stoufer,* 237 Ia 513, 21 NW2d 287; *Cummings v. Board of Education,* 190 Okla 533, 125 P2d 989.

In the strict sense the purpose of a penalty is to punish an offense against public justice, not to afford a private remedy to a person injured by the wrongful act. *Bowles v. Barde Steel Co.,* 177 Or 421, 428, 164 P2d 692, 162 ALR 328; *Huntington v. Attrill,* 146 US 657, 36 L ed 1123, 13 S Ct 224; *Denison v. Tocker,* 55 NM 184, 229 P2d 285. But this is not the view generally held (70 CJS 389, Penalties § 1), and as a matter purely of state law we rejected it in the recent case of *Kinzua Lumber Co. v. Daggett,* 203 Or 585, 281 P2d 221, 230. In earlier cases we held that the statute (ORS 86.140), which provides that if a mortgagee fails or refuses, in circumstances stated, to discharge a mortgage after full performance of the conditions thereof, he shall be liable to the mortgagor "in the sum of one hundred dollars damages, and also for all actual damages occasioned by such neglect or refusal

to be recovered in an action at law", is penal in character. The purpose of the statute was said to be to "quicken the diligence of a mortgagee in this regard." *Malarkey v. O'Leary*, 34 Or 493, 499, 56 P 521. Since the provision for the recovery of $100.00 is a "penal one", it must be strictly construed. *Knudson v. Knudson*, 128 Or 635, 642, 275 P 663. And in *Ebbert v. First Nat. Bank of Condon*, 131 Or 57, 64-66, 70, 279 P 534, we held that an action to recover under that provision was governed by the three-year statute of limitations applying to "an action upon a statute for penalty or forfeiture."

While the cases are legion which have considered the question whether particular statutes are penal in character or otherwise, there seem to be but few decisions upon statutes like the one here under consideration. Such statutes have been held to be penal in *Robinson v. St. Maries Lumber Co.*, 34 Ida 707, 204 P 671; *Martin v. Going*, 57 Cal App 631, 207 P 935; *Manford v. Memil Singh*, 40 Cal App 700, 181 P 844; *Chicago, R. I. & P. R. Co. v. Russell*, 173 Ark 398, 292 SW 375, 51 ALR 1206. In an early Arkansas case the court said of a similar statute applicable only to railroad employees, "It is allowed for a double purpose, as a compensation for the delay, and as a punishment for the failure to pay. It is composed of all the elements and serves all the purposes of exemplary damages." *Leep v. St. Louis, I. M. & S. Ry. Co.*, 58 Ark 407, 440, 441, 25 SW 75, 23 LRA 264, 41 Am St Rep 109. But the Supreme Court of the United States, construing the same statute as a question of federal law, held that it was a penalty, saying, "Whatever name may be applied, the element of punishment clearly predominates * * *." *Missouri Pacific R. Co. v. Ault*, 256 US 554, 565, 65 L ed 1087, 41 S Ct 593.

A federal statute requiring a master or owner of a ship, who fails or refuses to pay a seaman his wages without sufficient cause, to pay him a sum recoverable as wages equal to two days pay for each and every day during which payment is delayed has been held not to provide for a penalty or forfeiture but for compensation. *Calvin v. Huntley,* 178 Mass 29, 59 NE 435; *Cox v. Lykes Brothers,* 237 NY 376, 143 NE 226. These decisions proceed upon the reasoning, not only that Congress said that the extra compensation "shall be recoverable as wages", but because of the purpose of the statute. "The purpose", said Mr. Justice (then Judge) Cardozo in the Cox case, "or at least the predominant one, was, not punishment of the master or owner, but compensation to the seaman. Delay means loss of opportunity to ship upon another vessel. It means hardship during the term of waiting, the sufferer often improvident, and stranded far from home." And, in reference to the statute considered by the Supreme Court in *Missouri Pacific R. Co. v. Ault,* supra, the court continued:

"* * * From the viewpoint of the government, the court found this provision predominantly penal, as well it might, not only because the statute so declared, *but also because of the differing situation of seamen on the one hand and railroad workers on the other.*" (Italics added.)

■ We think that the provision here in question is penal in character. Its purpose is to spur an employer to the payment of wages when they are due. Compensation to the employee is merely incidental.

■ There are many points of difference between this provision and ORS 105.815, which was considered in *Kinzua Lumber Co. v. Daggett,* supra. That statute provides for the recovery of double damages by one

whose timber is cut by another without lawful authority when the trespass is "casual or involuntary." We held that the provision was not one for a penalty, but for "extraordinary damages or statutory-liquidated damages". The fact that the recovery was allowed for a nonwilful act was considered relevant to that conclusion. So, also, were the difficulty of proving all the real damages suffered by the owner in a case of that kind, and the expense and trouble to which the owner is put by the necessity of maintaining an action in court. Under the wage statute, on the other hand, the additional liability is only for a wilful wrong, and the expense of litigation is taken care of by a provision for the allowance of attorney's fees to the successful claimant. ORS 652.200. The statute itself uses the word "penalty". The name given the exaction, it is true, may not always be controlling (70 CJS 389, Penalties § 1; *St. Louis, I. M. & S. Ry. Co. v. Walsh,* 86 Ark 147, 110 SW 222), but it sheds light on the legislative intent. *Robertson v. Argus Hosiery Mills, Inc.,* 121 F2d 285, 286 (CCA 6th); *Floyd v. DuBois Soap Co.,* 139 Oh St 520, 41 NE2d 393, reversed on other grounds, 317 US 596, 87 L ed 488, 63 S Ct 159; *Denison v. Tocker,* supra; *Cox v. Lykes Brothers,* supra.

It is quite true, as counsel for the defendant contends, that a cause of action to recover a statutory penalty is not assignable. 6 CJS 1086, Assignments § 37. As stated in *Wilson v. Shrader,* 73 W Va 105, 112, 79 SE 1083, Ann Cas 1916D 886 (which arose on a claim for a penalty for mining coal within five feet of the land of an adjacent owner), "the reasons that preclude the assignability of mere personal rights, such as actions for slander, assault and battery and other pure torts, obviously apply here. Assignability

of such claims encourages litigation and strife. The same principle of public policy forbids the conversion of penalties into commodities or assets.'' The test of assignability is whether the right survives (*Mitchell v. Taylor,* 27 Or 377, 384, 41 P 119), and personal rights do not survive. *Rorvik v. North Pacific Lumber Co.,* 99 Or 58, 91, 190 P 331, 195 P 163. In *Robinson v. St. Maries Lumber Co.,* supra, 34 Ida at p. 711, it was held that the right to recover a wage claimant's penalty is not assignable. But there the assignments were by endorsement and delivery of time checks for which the assignees paid in full. On the other hand, in California, which recognizes the rule against assignment of a claim for a penalty (*Peterson v. Ball,* 211 Cal 461, 296 P 291, 74 ALR 187) it was held in *Martin v. Going,* supra, that an assignment of wage claims for purposes of collection carried with it the right in the assignee to sue both for the wage and the penalty. *Colcord v. Granzow,* 137 Okla 194, 278 P 654, 64 ALR 699, is a similar decision. The suit was brought under a statute which made directors of a corporation liable to creditors where the directors created indebtedness in excess of the capital stock of the corporation. Some of the plaintiffs were assignees of notes given by the corporation. The court held that the right of action given by the statute was based on contract, and the assignments carried with them the right to sue as an incident to the debt. *Peterson v. Ball,* supra, was an action based on a California statute similar to that involved in the Oklahoma case. The plaintiffs sued as trustees by assignment executed by the corporation for the benefit of creditors of the corporation. The court held that the statute was penal in character, and the claims therefore not assignable. But the opinion was careful to point out, referring to *Colcord v. Gran-*

*zow;* supra, and *United States Farm Land Co. v. Bennett,* 55 Cal App 299, 203 P 794, that nothing in the decision "is at variance with the conclusion of these two cases that the assignment of a debt carries with it the right to enforce the liability of a director imposed as a penalty." The court refrained from expressing an opinion on that question, but said that it is "the naked right to sue upon the statutory penalty" which is not assignable by the corporation (211 Cal 480).

A somewhat analogous question was decided in *Falconio v. Larsen,* 31 Or 137, 48 P 703, 37 LRA 254. A statute provided for a preference in favor of the debts of laborers and employees whenever an assignment for the benefit of creditors should be made, such claim to be paid out of the proceeds of the property assigned. After such an assignment 98 former employees of the insolvent debtor presented their verified claims to the assignee as prescribed by the statute. A debtor filed exceptions to the claims, which were thereupon assigned to the plaintiff Falconio for collection, and he brought the action upon them. The defendant contended that the preference, being "a mere personal privilege", was not assignable. The court, in an opinion by Mr. Justice WOLVERTON, said:

"* * * It is merely a question here whether a preferred claim of the class created by the enactment is assignable, so as to entitle the assignee to prosecute the action in his own name to establish the debt, its nature and amount, if contested; and we are of the opinion that it is. The right of exercising the privilege in claiming the preference we hold to be personal, but, when exercised by the presentation of the statement, the preference becomes an incident of the debt or claim for wages, and may be assigned; and henceforth the action may be prosecuted in the name of the legal owner and holder of the claim if contested. This interpretation

is manifestly in consonance with the spirit of the act. It was designed to protect a deserving class of individuals, who are usually dependant [sic] upon their recent earnings for the sustenance of themselves and those dependant [sic] upon them, and it was undoubtedly the purpose of the legislature to make the wages of labor speedily available, and the assignment of their preferred claims would more frequently promote the purpose than otherwise.''

While we recognize that the two cases are not wholly similar, they have this much in common : that they both involve the question whether a right not ordinarily assignable may be assigned as an incident to a contract debt. It is, of course, clear that ''the naked right'' to recover a penalty may not be assigned. But the reasons for such a rule, as stated in *Wilson v. Shrader,* supra, would seem to be not present at all when, as here, the assignment of the penalty is made as an incident to an assignment of the wage claim, and not as a commercial transaction, but only to enable the assignee to maintain an action for the benefit of the assignors as well as of himself. In such a case no complaint can be justly made of trafficking in a litigious right. On the other hand, that such a method of proceeding may, in particular instances, where there are a large number of such claimants against a single employer, serve the purpose of convenience, is readily apparent. We hold, therefore, that in the circumstances of this case the Circuit Court committed no error in refusing to strike from the complaint the allegations with respect to the penalty. *Martin v. Going,* supra. The further contention that penalties cannot be recovered where there is a joint contract of employment was considered and decided adversely to the defendant in *McGinnis v. Keen,* supra, 189 Or at p. 459, and we see no reason for re-examining that question.

It is contended that, under the evidence, the relationship between plaintiff and his assignors and the defendant was not that of employees and employer, but that they were independent contractors, and, therefore, that the penalty provision of the statute, being for the benefit only of employees, cannot be invoked in this case.

The evidence is that the three loggers applied for the job as the result of an advertisement in The Oregonian stating that the defendant wanted buckers and fallers. They were experienced loggers accustomed to work together as a crew. They sought out the defendant Johnston in Vernonia, and he took them to his logging operation near the town. They agreed upon compensation at the rate of $2.50 per thousand for timber felled and bucked; $1.50 per thousand for timber felled; and for trimming bucked logs $1.00 per thousand. Nordling acted as spokesman for the group. Johnston was concerned about "saving his trees", and Nordling represented that by reason of their experience they could do this. The rate of compensation agreed on was higher than that which Johnston at first offered. Johnston tendered the use of his tools, but the men found them unsatisfactory and used their own save for two saws and wedges and sledges belonging to Johnston. The men paid their own board and furnished their own transportation. Johnston showed them his tract of timber and pointed out to them the place where they should commence their work and the direction they were to take in falling the trees. They did not know the limits of the timber at the time. With the exception of certain suggestions which Johnston made with regard to a "rotten fir" he did not tell them how to do the job. Nordling and Jacobsen did the falling and Newman bucked. They

were discharged by Johnston after having worked one week on the ground, as Johnston claimed, that, contrary to his instructions, they felled two certain trees, and did so in such a negligent manner as to break and damage them.

On this evidence the court cannot say as a matter of law that the relationship was that of an independent contractor. The test for determining whether one is a servant or an independent contractor is not the actual exercise of control—the actual interference by the employer with the manner and method of accomplishing the result—but the right to interfere. *Harris v. State Ind. Acc. Comm.*, 191 Or 254, 268, 230 P2d 175, and authorities there cited. And no single fact is more conclusive of the existence of this right to interfere than the unrestricted right of the employer to end the particular service whenever he chooses without regard to the final result of the work itself. Idem, 269. The evidence would have justified a finding that this power of dismissal was reserved to the defendant. This and the other circumstances—some pointing to an independent contractor relationship—made the question one for the jury, and the court submitted it to the jury in a proper instruction. See *Bowser v. State Ind. Acc. Comm.*, 182 Or 42, 185 P2d 891. The contention that the workmen could not have been employees within the meaning of the statute because they were working under a joint contract is contrary to what we decided in the McGinnis case. 189 Or 459, 460. See, also, *Pitts v. Crane*, 114 Or 593, 236 P 475.

The defendant next contends that there is no evidence that he "wilfully" refused to pay the men their wages. This was stated as one of the grounds of the motion for a directed verdict, but obviously the court could not have allowed the motion on that ground

since it goes only to a portion of the plaintiff's cause of action. There was no motion to withdraw from the consideration of the jury the question of a penalty. Such a motion would have been necessary in order to reserve the question for consideration by this court. We have, nevertheless, considered it, and will content ourselves with stating our conclusion that the trial judge properly submitted to the jury the determination of whether the failure to pay was wilful or otherwise. The meaning of the term "wilful" in the statute is correctly stated in *Davis v. Morris,* 37 Cal App 2d 269, 99 P2d 345.

█ The defendant excepted to, and assigns as error, the giving of an instruction by which the jury were told, in effect, that the plaintiff and his assignors were under a duty to perform the work in the same manner that a reasonable and prudent person would have performed it under the same or similar circumstances. It is contended that the instruction was erroneous because the loggers represented that they were skilled in that kind of work. But this was one of the circumstances in evidence, and presumably would be taken into consideration by the jury in determining whether the work was performed with the requisite degree of care and skill.

█ Finally, it is urged that the court erred in withdrawing from the consideration of the jury the defendant's fourth further and separate answer and counterclaim. By this pleading the defendant sought to recover the sum of $2250.00, being three times the value of the two trees which the defendant claimed the loggers felled without authority and damaged. The treble damages thus claimed are authorized by ORS 105.810 to be recovered from a person who, without lawful authority, wilfully cuts down any tree. Without

determining whether, as plaintiff suggests, the statute is inapplicable to an unauthorized falling of trees in circumstances such as exist in this case, we think it sufficient to say that no prejudice to the defendant resulted from the ruling because the issue as to whether the trees in question were felled contrary to the instructions of the defendant was made by the second further and separate answer and counterclaim in which defendant sought recovery of $750.00, the alleged value of the trees, and that issue was submitted to the jury in a proper instruction. If, as the jury necessarily found, the defendant was not entitled to recover from the plaintiff the actual value of the trees, a fortiori, he was not entitled to recover three times their value.

## Plaintiff's Cross-Appeal

The court instructed the jury that if the defendant wilfully failed to pay the plaintiff and his assignors their wages or compensation, though financially able to do so, then "plaintiff is entitled to recover for himself and his assignors for a period not to exceed 30 days, *and in an amount equal to what they earned in the period immediately preceding the termination of employment* at not to exceed $19.80 per day by the way of a penalty and not for more than 30 days." (Italics added.) The jury found by their verdict that plaintiff was entitled to recover the sum of $356.34 as wages, and fixed the amount of the penalty at $891.00. Upon motion for a new trial the court reduced the penalty to $356.34, the exact amount of the judgment for wages. Judgment was entered accordingly, and the plaintiff has cross-appealed from the judgment for a penalty as so fixed by the court.

Plaintiff contends that the ruling proceeds upon an erroneous interpretation of the statute. ORS 652.-

150 provides that upon a wilful failure to pay an employee his wages when due, "as a penalty for such nonpayment, the wages or compensation of such employe shall continue from the due date thereof at the same rate until paid or until action is commenced; provided that in no case shall such wages continue for more than 30 days." We think that the statute means what it says. The length of time that a man has worked for a particular employer and the amount he has earned, have no bearing on the amount of the penalty except as it may be necessary to consider these factors in order to determine the *rate* at which he was paid. The statute really requires no construction, for it plainly provides for the continuance of the workman's wages or compensation for a period not to exceed 30 days at the same rate at which he was being paid while he was working. If, for example, a man works 30 days at a wage of $5.00 per day, the penalty would be $5.00 per day for every day that payment is withheld, and would continue for 30 days if the wages are then unpaid, unless action was commenced before the period of 30 days has elapsed. If the man works only one day at that rate the penalty would be exactly the same. Where, however, he does what is in the nature of piece work, as here, and is not paid a fixed daily or weekly wage but is paid on the basis of the quantity of work done, then, in order to apply the statute it becomes necessary to arrive at the rate per day by computation. This the trial judge did in that part of his instruction which told the jury that the penalty should not exceed $19.80 per day. This sum evidently was arrived at by dividing the amount earned $356.34, by six, the number of days during which the work continued, and then—on the theory that the contract was several—taking a third of the quotient

as the amount of the penalty which each of the three men would be entitled to recover. But the part of the instruction which further limited the penalty to ''an amount equal to what they earned in the period immediately preceding the termination of the employment'' was erroneous, for the reasons already given. The defendant relies as support for the instruction on the following dictum in the McGinnis case, ''The penalty recovery is not the amount which the employee seemingly would have earned had his employment continued, but is equal to the amount he earned in the period immediately preceding the cessation of his employment.'' 189 Or 454. The latter part of this statement happened to be true under the facts of the McGinnis case, but it cannot be followed as a rule since, as we have said, the statute does not mean that the penalty is to be determined by the amount which the employee earned, but by the rate of pay at which he worked.

■ The sum of $891.00 at which the jury fixed the penalty is exactly half of the penalty claimed in the complaint, to-wit, $1782.00. It is evident that the jury did not follow the instruction of the court on the subject, but simply took the law into their own hands and allowed a sum which in their opinion seemed to be just and equitable. The court was right in setting aside the jury's determination of the penalty, but erred in making its own determination measured by the wages earned. The rate of wage should be computed at $59.39, making the total penalty for a period of 30 days the sum of $1781.70. There is no dispute in the evidence as to the terms of the employment or the number of days worked. The verdict of the jury settled the question of the amount to which the loggers were entitled as compensation. Ascertainment of the amount of the

penalty then becomes a mere matter of mathematical computation. Since we are able to determine this amount without re-examining any fact tried by the jury, the judgment of the Circuit Court will be modified so as to provide for a penalty in the amount of $1781.70 instead of $356.34. Oregon Constitution, Art. VII, § 3.

As so modified the judgment is affirmed.

WARNER, C. J., dissenting.

Although I appreciate that the question is a close one, I believe a contract of employment of the kind described in the majority opinion establishes as a matter of law the status of employer and independent contractor. Some of the proponents for the contrary thought, as expressed by the majority opinion, have urged that the relationship of employer and independent contractor would have deprived Nordling and his coworkers, and others similarly situated, of the privileges accorded by the Workmen's Compensation Act. Such a conclusion is, of course, in error. ORS 656.128.

On Petition for Rehearing

*Barzee, Leedy, Keane & Erwin,* Portland, for the motion.

*Bailey, Lezak and Swink,* Portland. On the brief were Peterson and Pozzi, Portland.

Before WARNER, Chief Justice, and LUSK, BRAND and LATOURETTE, Justices.

LUSK, J.

Defendant contends in a petition for rehearing that our decision violates the guaranty of the right to a

jury trial found in the first sentence of Article VII § 3 of the State Constitution, which reads:

"In actions at law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of this State, unless the court can affirmatively say there is no evidence to support the verdict."

■ It is asserted that, contrary to the finding of the jury, we determined that the contract of hiring was joint and not several. It is true that the trial judge instructed the jury that plaintiff could not recover unless separate agreements of employment with the plaintiff and each of his assignors had been proved. But this was an erroneous instruction, both under the complaint and the evidence. Defendant's counsel contended in the Circuit Court, and urged in argument here, that the proof showed a joint contract, and we agreed. They also argued that the complaint alleged a several contract, but there we were compelled to disagree on the authority of *McGinnis v. Keen*, 189 Or 445, 221 P2d 907. In these circumstances, to sustain the verdict is not to re-examine "otherwise" a fact found by the jury, but is to arrive at the same ultimate conclusion as the jury, though by a somewhat different route. There is no violation of the right of trial by jury in that process, for, with respect to the issue whether the contract was joint or several only one conclusion was possible, and it can be affirmatively said that there was no evidence to support a finding that the contract was several.

■ It is also urged that we erred in not applying the rule which restricts the parties on appeal to the theory of the case in the trial court. This contention is based upon the fact that in the Circuit Court the plaintiff

appears to have claimed that the contract alleged in the complaint was several, whereas in this court he conceded that it was joint. The rule invoked by the defendant was thus stated in *Edwards, Guardian v. Hoevet,* 185 Or 284, 297, 200 P2d 955, 6 ALR2d 104:

"This court is a court of review. We can not sustain verdicts and findings upon conceptions of the facts which the disfavored party never had an opportunity of contesting. A familiar rule of appellate practice restricts the appellant to the theory he pursued in the trial court. He can not in this court raise issues that he did not present and rely upon in the circuit court".

In *Stotts v. Johnson and Marshall,* 192 Or 403, 420, 234 P2d 1059, 235 P2d 560, we said that this rule "prevents the appellant and the respondent alike from reaching out upon appeal for views concerning the facts and the issues which are inconsistent with or different from those which the party took in the trial court. The rule recognizes that an appellate court is a court of review and thus the operation of the rule restricts the scope of review."

The Edwards case furnishes an apt illustration of a proper application of the rule. The plaintiff sued on an account stated and the jury returned a verdict in his favor. The Circuit Court entered judgment for the defendant notwithstanding the verdict and the plaintiff appealed, and in this court sought to sustain the verdict on the theory, not of an account stated, but of a promise to pay the debt of another. In refusing to give heed to this contention we said at p. 298:

"Were we to depart from the theory upon which this cause was tried in the circuit court and reinstate the verdict, under a belief that the appellant was entitled to prevail as the party in whose favor the respondent made a promise, it may be that we

would thereby deprive the respondent of defenses he would have interposed had the complaint been framed upon the embraced theory.''

There is, of course, no such situation in this case. Had the plaintiff claimed in the Circuit Court that the contract was joint instead of several the result, under a proper interpretation of the evidence and a correct view of the law, would have been no different. Were we to remand the cause for a new trial and should the evidence be the same as before, the judge would be required to instruct the jury that the contract was joint, but that, nevertheless, the jury could find that the relationship was that of employer and employee and not that of independent contractor. No prejudice to the defendant has resulted from the plaintiff's change of position, and this court, in affirming the judgment, has kept well within the bounds set for it as a court of review. Had the plaintiff adhered to the view which he took on the trial respecting the effect of the evidence, it still would have been our duty to declare the law correctly and to affirm the judgment notwithstanding the error in the instructions, for we are admonished by statute to reverse a judgment only ''for errors substantially affecting the rights of the appellant''. ORS 19.120.

The defendant again argues that a joint contract for the performance of services by members of a partnership or joint adventure cannot be a contract of employment. We held that it could be on the authority of two of our own decisions: *McGinnis v. Keen,* supra; *Pitts v. Crane,* 114 Or 593, 236 P 475. Plaintiff, in a brief filed in answer to the petition for rehearing, calls attention to the case of *Case v. Kadota Fig Ass'n of Producers,* (Cal App) 207 P2d 86, 94, 95, affirmed 35

Cal2d 596, 220 P2d 912, in which the District Court of Appeals said with reference to a similar contention:

"The fact, stressed by appellants, that the agreement with respect to their services was not made with Case and Swayne individually but with their partnership and that the partnership was to receive the compensation does not exclude the existence of an employment relation, even if we should consider in this respect the partnership as an entity separate from the individual members. An employer can lend or hire an employee to another, at least with the employee's consent, and there will be an employment relation with the general employer, the special employer or both depending on who has control and direction of the employee. Industrial Indemnity Exch. v. Industrial Acc. Comm., 26 Cal. 2d 130, 134, 156 P.2d 926, et seq. Whether the borrower pays the employee directly or reimburses the lender is not decisive. Compare 16 Cal. Jur 959; Independence Indemnity Co. v. Industrial Acc. Comm., 203 Cal. 51, 262 P. 757. Although those questions as a rule come up in respect to liability for workmen's compensation, the principles apply also outside that field. See 56 C.J.S., Master and Servant § 2, p. 38. It would seem that in the same manner a partnership can contract to provide the labor of its members with their consent, either under control and direction of the party for whom the work is done or independently. If, as here, the party receiving the services takes control and direction there is an employer-employee relation with the individual workers. The fact that the payments were made by check to the order of Case-Swayne Company and booked in an account 'Services purchased, Management contract,' seems in accord with the manner in which the contract was drawn and without separate significance. That no deduction for income tax, social security, etc. were made, cannot be conclusive against an employment relation under the special circumstances, where the unusual

set up of the contract caused the question of deductions to be problematic."

We are not convinced that members of a crew of loggers, hired to log a tract of timber, are not to be regarded as employees entitled to recover the penalty for failure to pay wages prescribed by ORS 652.150, simply because they were hired jointly.

Other matters are urged by the petitioner, but, as they are either reiteration of arguments previously considered or bear only remotely on the legal questions arising out of the issues in this case, they do not call for special comment.

The petition for rehearing is denied.