Argued and submitted February 25, affirmed October 30, 1985

LEONARD,
*Appellant,*

*v.*

ARROW-TUALATIN, INC.,
*Respondent.*

(83-0829C; CA A31731)

708 P2d 630

Douglas A. Swanson, Portland, argued the cause for appellant. With him on the briefs was Royce, Swanson & Thomas, Portland.

John Schwab, Tigard, argued the cause for respondent. With him on the brief was McClure & Schwab, Tigard.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

This is a claim under the Wage Claim Act. ORS 652.140; 652.150; 652.200.[1] Defendant is a manufacturer of

---

[1] ORS 652.140 provides:

"(1) Whenever an employer discharges an employe, or where such employment is terminated by mutual agreement, all wages earned and unpaid at the time of such discharge shall become due and payable immediately; provided, that in establishments where perishable or seasonal commodities are processed or handled, when termination of employment results from fluctuation in or cessation of the flow of such perishable or seasonal commodities, such termination shall not be regarded as a discharge or termination by mutual agreement, within the meaning of this section, but all wages earned at the time of such termination shall become due and payable not later than the regular payday on which such wages normally would be paid.

"(2) When any such employe, not having a contract for a definite period, shall quit his employment, all wages earned and unpaid at the time of such quitting shall become due and payable immediately if such employe has given not less than 48 hours' notice, excluding Saturdays, Sundays and holidays, of his intention to quit his employment. If such notice is not given, such wages shall be due and payable 48 hours, excluding Saturdays, Sundays and holidays, after such employe has so quit his employment.

"(3) The employer shall forward such wages by mail to any address designated by the employe if the employe requests the employer so to do. An employer may deposit such wages without discount in the employe's account in a bank, national bank, mutual savings bank, credit union, or savings and loan association in this state, provided the employe and the employer have agreed to such deposit."

ORS 652.150 provides:

"If an employer wilfully fails to pay any wages or compensation of any employe who is discharged or who quits his employment, as provided in ORS 652.140, then, as a penalty for such nonpayment, the wages or compensation of such employe shall continue from the due date thereof at the same rate until paid or until action therefor is commenced; provided, that in no case shall such wages or compensation continue for more than 30 days; and provided further, the employer may avoid liability for the penalty by showing his financial inability to pay the wages or compensation at the time they accrued."

ORS 652.200 provides:

"(1) In any action for the collection of any order, check, memorandum or other acknowledgment of indebtedness referred to in ORS 652.110, if it is shown that the order, check, memorandum or other acknowledgment of indebtedness was not paid for a period of 48 hours, excluding Saturdays, Sundays and holidays, after presentation and demand for the payment thereof, the court shall, upon entering judgment for the plaintiff, include in such judgment, in addition to the costs and disbursements otherwise prescribed by statute, a reasonable sum for attorney fees at trial and on appeal for prosecuting said action, unless it appears that the employe has wilfully violated the contract of employment.

"(2) In any action for the collection of wages, if it is shown that the wages were not paid for a period of 48 hours, excluding Saturdays, Sundays and holidays, after the same became due and payable, the court shall upon entering judgment for the plaintiff, include in such judgment, in addition to the costs and disbursements

woodstoves and related products. Plaintiff was employed by defendant from September, 1981, until he quit in September, 1982. After quitting, he made claims for wages for (1) work done as swing-shift supervisor before and after his shift; (2) overtime on his timecards; and (3) other overtime he claimed to have accumulated in accordance with an agreement with defendant's president. The case was tried to the court which found against plaintiff on all three claims.[2] We affirm.

The issue before us, although phrased differently by plaintiff and defendant, is what elements must be proved to prevail on a claim for overtime work in an action brought under the Wage Claim Act. Plaintiff argues that the trial court added an element to his burden of proof by requiring that he prove that the overtime work was "authorized." It is plaintiff's position that all he must prove is that he was an employe of defendant and that he performed work for which he was not paid. Defendant argues that it is a defense that the uncompensated work was accumulated in violation of its notice that no overtime work was to be done and that, if overtime work was done, it would not be compensated.

■■ The Wage Claim Act creates rights that were not available at common law. It imposes time limits within which an employer must pay "wages earned and unpaid" after an employe either quits or is discharged and grants the employe a right to damages, if the employer wilfully fails to pay the wages within the time limits. However, the statutes do not give an employe a right to work at will, in violation of instructions from the employer, and then claim wages and penalties if the employer refuses to pay wages for the unauthorized work. The basis of the employe-employer relationship remains a contractual one and, in order to prevail under the Wage Claim Act, an employe must prove the agreement, express or implied, which gives him the right to expect compensation. *See, generally, Nordling v. Johnston,* 205 Or 315, 283 P2d 994 (1955).

Essentially, plaintiff's position is that *any* labor done

otherwise prescribed by statute, a reasonable sum for attorney fees at trial and on appeal for prosecuting said action, unless it appears that the employe has wilfully violated the contract of employment.

[2] At oral argument, plaintiff conceded that the appeal of his first claim is not properly before this court. We do not consider it.

at the place of employment constitutes "work" for which compensation must be paid. His argument misconstrues the concept of "work" in an employment context. That concept was discussed by the Supreme Court of the United States in *Tennesee Coal, Iron & R. Co. v. Muscoda L. No. 23,* 321 US 590, 64 S Ct 698, 88 L Ed 949 (1944), brought under the Federal Fair Labor Standards Act:[3]

> "To hold that an employer may validly compensate his employees for only a fraction of the time consumed in actual labor would be inconsistent with the very purpose and structure of those sections of the Act. It is vital, of course, to determine first the extent of the actual workweek. Only after this is done can the minimum wage and maximum hour requirements of the Act be effectively applied. And, in the absence of a contrary legislative expression, we cannot assume that Congress here was referring to work or employment other than as those words are commonly used—as meaning physical or mental exertion (whether burdensome or not) *controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."* 321 US at 598. (Emphasis supplied).

■  Here the trial court found that plaintiff had failed to prove that the work for which he was claiming wages was "authorized," that is, required or controlled by the employer. On plaintiff's second claim, the court concluded from the evidence that there had been no authorized overtime. On plaintiff's third claim, the court found that the plaintiff had wanted to learn about a robotic welder and had spent time with the machine when he was specifically told not to. Evidence supports those findings, and we are bound by them.

■  Plaintiff also claims wages due for two Sundays on which he worked. Before trial, the parties stipulated that plaintiff had worked the Sundays, but defendant did not stipulate that the work was authorized. The trial court found the evidence insufficient to support the claim that any overtime work had been authorized. We may not disturb that finding, if there is evidence to sustain it. There is.

Affirmed.

---

[3] The Oregon Minimum Wage Act defines "employ" to include "suffer or permit to work * * *." The court's findings in this case can fairly be read to determine that defendant did not suffer or permit plaintiff to work the hours in question.